O'CONNOR-SULLIVAN, INC., Appellant, v. EARL OTTO, Respondent.

Third Department, January 27, 1954.

*Bernard Ellenbogen* and *Meyer A. Jeneroff* for appellant.

*Milton B. Knox* for respondent.

*Per Curiam.* This is an appeal from an order of the Albany County Court denying the plaintiff's motion for summary judgment under rule 113 in an action for real estate commissions.

The defendant entered into an agreement with the plaintiff giving the plaintiff an exclusive agency for the sale of certain real property in the city of Albany. The brokerage agreement was executed upon a printed form prepared by the plaintiff, which provided for the payment of commissions "upon the transfer, sale or exchange of said property by whomsoever made or effected".

The plaintiff procured a purchaser who entered into a contract with the defendant on May 17, 1952, for the purchase of the premises at a price and upon terms acceptable to the defendant. The contract provided that the transfer of title was to take place on October 31, 1952, and further provided: "Premises are to be vacated by the seller and all his tenants and possession of the entire premises to be delivered on day of transfer of title". A subtenant of part of the premises refused to vacate and the defendant was unable to deliver possession of the premises upon the closing date or within a reasonable time thereafter. The purchaser thereupon rescinded the contract and demanded the

return of his $500 deposit. This deposit had been paid over to the plaintiff and, upon the plaintiff's refusal to refund it, the defendant paid the sum of $500 to the purchaser; he has interposed a counterclaim in this action for the recovery of that sum.

The plaintiff's theory, as set forth in the complaint and in the affidavits upon this motion, is that the plaintiff became entitled to commissions immediately upon procuring a purchaser and upon the purchaser executing the contract of sale. However, as noted above, the brokerage agreement stated that the commissions were payable "upon the transfer, sale or exchange" of the property. The defendant's answer and affidavits assert that it was orally agreed that no commissions would be payable unless the purchaser "actually purchased said premises". The plaintiff, on the other hand, contends that the word "sale" in the printed agreement referred to the execution of the contract of sale rather than to its consummation.

The brokerage agreement was, at best, ambiguous and, since it had been prepared by the plaintiff, any ambiguity should be resolved against it (*Shubert Theatrical Co.* v. *Gallagher,* 200 App. Div. 596). It may be noted that the agreement was so drawn as to entitle the plaintiff to commissions even if the sale was effected by others. Presumably, in this context, the word "sale" referred to an actual consummation; the plaintiff would hardly expect to be paid commissions if the defendant had merely entered into a contract to sell the premises to a purchaser procured by someone else and the sale had failed of consummation. In any event, the language being ambiguous, parol evidence is admissible to show the intention of the parties and to resolve the ambiguity (Restatement, Contracts, §§ 231, 238). This issue of itself requires a trial and precludes the possibility of awarding summary judgment to the plaintiff upon the basis of its interpretation of the agreement.

It is true that, even if the brokerage agreement is construed as requiring actual consummation of the sale, as a condition precedent to the obligation to pay commissions, the plaintiff may ultimately be successful in recovering commissions if it can establish that the failure of consummation was attributable solely to the defendant's fault. But, if the plaintiff shifts to this theory, the burden will rest upon it, both to plead and to prove that the defendant was at fault and that the performance of the condition precedent was therefore deemed to be excused or waived (*Stern* v. *Gepo Realty Corp.,* 289 N. Y. 274). The plaintiff has not pleaded waiver in its complaint. In its affidavits, the plaintiff hints at the waiver theory but it does not

set forth evidentiary facts which establish that there was a waiver as a matter of law and that no question of fact remains open in that regard. The plaintiff's counsel stresses the fact that the affidavits in opposition submitted by the defendant do not give a complete statement of his version of the transaction but, upon the analysis here made, the deficiency in the affidavits on both sides cuts against the plaintiff rather than against the defendant. The plaintiff is the one seeking summary judgment and the burden rests upon it, in the first instance, to set forth " such evidentiary facts as shall   *   *   *   establish the cause of action sufficiently to entitle plaintiff to judgment " (Rules Civ. Prac., rule 113).

Upon the plaintiff's shift to the waiver theory, the basis of the plaintiff's contention must necessarily be that the defendant failed to act with due diligence in removing the tenant and the subtenant from the premises and that his inability to deliver possession of the premises on the closing date, or within a reasonable time thereafter, was due to such lack of diligence.

In order to understand this aspect of the controversy, it is necessary to consider the terms of the lease covering the premises which was outstanding at the time of the making of the contract of sale. The lease was not attached to the affidavits as an exhibit but we are told that it was submitted to the court below and photostatic copies have been submitted upon this appeal. The lease was acknowledged before a notary public and was recorded in the Albany County Clerk's Office. We may consider the lease, although it is not technically part of the record, under the rule that incontrovertible documents may be received upon appeal to uphold the judgment or order appealed from. (6 Carmody on New York Practice, § 316; *Lalourelle* v. *New York Central R. R. Co.*, 275 App. Div. 123.)

It appears from the lease that the defendant had leased the entire building for a term of three years commencing November 1, 1949, and ending on October 31, 1952. This was the very day upon which title and possession were to be transferred under the contract of sale. The lease consisted of a long printed form with blanks filled in in typewriting and with certain typewritten additions. In the printed paragraphs of the lease there appears the following sale clause: " 18. That if the landlord should sell said premises, prior to the expiration of this lease, and the purchaser thereof desires possession of said premises, then and in that event, the tenant will cancel this lease and surrender possession of said premises, ........, upon receiving ———— days written notice of the cancellation of this lease ".

The blank in the printed clause was not filled in.

At the end of the lease there was a typewritten addition reading as follows: " 28. That the tenants have the option to renew this lease upon the same terms and for the same rent for a period of five (5) years, by giving notice in writing of intention to renew to the landlord sixty (60) days prior to the end of the term stated herein."

Upon the face of the lease, there was a serious question as to the effectiveness of the sale clause. In view of the fact that the blank as to the number of days' notice to be given to effect a cancellation, had not been filled in, it might well be argued that the parties to the lease had not intended to adopt the sale clause as part of their agreement. This argument is supported by the fact that in the typewritten addition, an unqualified right to renewal was given without any reference to the possibility of its being cut off by the exercise of the right of cancellation under the sale clause.

According to the affidavits ,the defendant brought this question to the attention of the plaintiff's agents at the time of the execution of the brokerage agreement. He also discussed it with them prior to the execution of the contract of sale and questioned the advisability of agreeing to deliver possession on October 31, 1952. The plaintiff's agents assured the defendant that the cancellation clause was effective and that he would have no trouble in removing the tenants from the premises in time to deliver possession on the date specified in the proposed contract. In reliance upon this assurance, the defendant executed the contract of sale.

As has already been noted, the affidavits on both sides are somewhat obscure as to exactly what happened after the execution of the contract of sale but the following facts can be pieced out from them: The defendant apparently served a notice of cancellation of the lease to take effect on October 31st, the date of the expiration of the original term of the lease. The principal effect of this notice, if it was effective at all, was to cut off the tenant's right of renewal. The tenant apparently then took the position that the defendant had no right to cancel the lease and he served a notice of election to renew the lease in accordance with the renewal clause quoted above. The affidavits are silent as to what happened next but apparently the tenant did not yield and agree to move out, until October 31st. However, it appears that a subtenant was in possession of part of the premises and he refused to vacate voluntarily upon the tenant's vacating.

On the next court day, November 3, 1952, the defendant commenced a summary proceeding to evict the subtenant. The defendant won a Pyrrhic victory in the summary proceeding; he was awarded a final order but the City Court Judge gave the tenant until December 28, 1952, to vacate. This ran beyond a reasonable time within which to deliver possession to the purchaser under the contract of sale and, as has been stated, the purchaser thereupon rescinded the contract and demanded the return of his deposit.

The plaintiff suggests that the defendant could have served a notice of cancellation terminating the lease upon an earlier date, so as to leave enough time for a summary proceeding or other litigation in the event the tenant and subtenant did not move out voluntarily. But, in view of the fact that the blank in the cancellation clause had not been filled in, the defendant may well have thought it unwise to attempt to cancel the lease upon notice of a period shorter than the period remaining to the expiration of the original term. To have done so would have injected into the controversy as to the effectiveness of the cancellation clause, an additional question as to whether the length of the notice was sufficient. Whether the defendant acted reasonably, under all the circumstances, in making the notice of cancellation effective on October 31st, is a question which can be resolved only upon a plenary trial.

According to the defendant's affidavits, the plaintiff's agents were fully aware of the outstanding lease and of the problems which it presented. They took the risk that the cancellation clause might be found to be ineffective or that the litigation with respect to it might be so prolonged that, without any fault on the part of the defendant, it might be impossible to deliver possession of the premises to the purchaser in time. In that event, the plaintiff would not be entitled to commissions (*Corbin* v. *Mechanics & Traders' Bank,* 121 App. Div. 744; *Dayton* v. *Gardiner,* 255 App. Div. 989). The defendant goes further and argues that the failure of consummation of the contract was primarily due to the plaintiff's fault; that the plaintiff was at fault in specifying so early a date for delivery of possession and in advising the defendant that it was safe to agree to that date. But it is not necessary to go this far in order to defeat a claim for commissions which, under the terms of the assumed brokerage agreement, were payable only upon consummation of the sale; it is sufficient if it appears that the broker knew all the facts which led to the failure of consummation and that the vendor was not at fault in causing the failure.

The denial of the motion for summary judgment was correct. The order should be affirmed, with costs.

IMRIE, J. (dissenting). Although, arguendo, plaintiff's papers may lack artistry, they meet the burden imposed by rule 113 and state a cause of action against defendant. The moving affidavit incorporates by reference an allegation of defendant's answer that the sole reason for the failure to consummate the contract of sale was his inability to deliver possession on the specified date. Thereupon it devolved upon defendant "to assemble and reveal his proofs in order to show that the matters set up in his answer were real and were capable of being established upon trial. * * * This he has totally failed to do. Mere general averments will not suffice." (*Dodwell & Co.* v. *Silverman*, 234 App. Div. 362, 363.) The rule itself requires "evidentiary facts."

The written agreements involved are similar to many passing current in modern real estate transactions. They may not be said to be patently ambiguous. With them in the record we find the classic pattern of a valid claim for broker's commissions in an instance where the completion of sale failed by reason of the principal's default. Defendant, affirming his own negligence in signing the agreements without reading them, seeks, in effect, to vary their terms by parol. That might be accomplished under proper circumstances. However, if we adhere to the purpose of the rule and its prescribed procedure, we must hold that his allegations and averments are stated in such general and conclusory terms and are so lacking in evidentiary facts that they do not show his defense to be real or capable of being established upon trial.

Except for the generalized claim of incorrect advice as to his ability to obtain possession from his tenant, defendant's affidavit meets the natural question as to what he did to that end during the period of four and one-half months in these words, "That various clauses in the lease * * * were conflicting and deponent desires a trial of this action * * *. That there were notices served on behalf of deponent on the tenants and there were notices served by the tenants upon deponent and the proposed purchaser which deponent feels constitutes valid and admissible evidence along with testimony in support thereof." In matters of this sort proof is called for in order that the court may exercise its function of drawing conclusions rather than a long bow of speculation.

The order should be reversed and plaintiff's motion for judgment granted, with costs.

FOSTER, P. J., BERGAN, COON and HALPERN, JJ., concur in *Per Curiam* opinion; IMRIE, J., dissents, in a memorandum.

Order affirmed, with $10 costs. [See *post,* p. 762.]