Burton M. Eggan, Plaintiff-Appellant, v. Frank J.
Simonds, Defendant-Appellee.

**Gen. No. 48,419.**

First District, Second Division.

January 30, 1962.

Leonard Gordon and Alan I. Boyer, of Chicago, for
appellant.

Aaron, Aaron, Schimberg & Hess, of Chicago, for appellee.

MR. JUSTICE BRYANT delivered the opinion of the court:

This is an appeal from a judgment against plaintiff in an action to recover $5000 given by plaintiff as a "deposit" for the acquisition of a proprietary lease and corporate stock of defendant's apartment. Trial below was without a jury.

On September 18, 1959, plaintiff consulted Sudler & Company concerning an offer for defendant's apartment. Plaintiff was told that the Board of Directors of the building corporation, which had to approve plaintiff, would be furnished with complete financial and personal information. Plaintiff, who was then contemplating marriage, requested that his application to the Board be held up until he authorized its submission. Since this would involve taking the apartment off the market for several months, a substantial deposit was required, the purpose and terms of which were controlled by two written agreements. Each of the agreements was dated and signed on the same date, September 18, 1959, and each of the agreements referred to the other.

The main purchase agreement, plaintiff's exhibit 2, reads as follows:

"I hereby offer to purchase on the terms and conditions herein set forth 60 shares of stock of Delaware Corporation, Inc. and to have assigned to me proprietary lease on Apartment No. 5W at 230 E. Delaware Pl. consisting of 7 rooms and 3 baths, the monthly assessment being $249 including operating expenses, taxes, interest and amortization on mortgages as provided in proprietary lease.

317

I agree to pay the sum of $22,500 for the cash equity.

Deposit herewith of $5,000 (to be returned if offer is not accepted). Disposition of deposit to be made in accordance with supplemental agreement dated, Sept. 18th, 1959. Further sum of $17,500 within five days after approval of Board of Directors of the above corporation or December 1st, 1959, whichever date shall be the later, it being understood and agreed that this sale is to be consummated and possession of the apartment given as of December 1st, 1959. . . . It is my understanding that I am to have an acceptance or rejection of this offer to purchase within a reasonable length of time and it is my further understanding that this offer is subject to the approval of the Building Corporation to the sale of stock and assignment of lease to me.

_____
Purchaser

The above offer is hereby accepted subject to the approval of the Board of Directors of the above corporation. . . .

_____
Seller"

The supplemental agreement reads in its entirety as follows:

"In consideration for the sum of $5,000 which I, Burton M. Eggan, hereinafter referred to as optionee, herewith hand you, Fanny J. Simonds, hereinafter referred to as optionor, receipt for which is hereby acknowledged, it is hereby understood and agreed that optionee shall have the right to purchase 60 shares of Delaware Corporation, Inc. and proprietary lease for apart-

318

ment 5W in the 230 East Delaware Bldg. between this date and the first day of December, 1959 by optionee paying optionor the further sum of $17,500 as set forth in a certain purchase agreement dated September 18th, 1959.

It is further understood and agreed that if optionee is approved for ownership by the building board and does not purchase the shares and apartment as stipulated herein, the $5,000 paid to optionor by optionee shall be retained by the optionor as consideration for his executing this agreement."

During the following months defendant paid the monthly assessments and at substantial expense moved most of her belongings from the apartment. In November, plaintiff advised Mrs. Blair of Sudler & Co. that his intended marriage would not take place and that he did not intend to go ahead with the purchase of the apartment, and he demanded the return of his $5,000. Plaintiff also told Mr. Watkins of Sudler & Co. and Mr. Steel, defendant's nephew, on November 24, 1959, that he would not go through with the purchase and wanted his payment returned. In November, 1959 plaintiff also told his associate, Mr. Pope, who was Chairman of the Board of Directors which had to approve plaintiff's application for ownership, that he no longer desired the apartment.

On November 30, 1959, the Assistant Secretary of the corporation, Mr. Watkins, received a copy of a letter addressed to the defendant and sent by plaintiff by certified mail in which plaintiff stated that he desired to appear before the Board of Directors to secure their approval. This was the first and only action taken by plaintiff to authorize the submission of his application to the Board or to exercise his option. The Assistant Secretary mailed the information

he had about plaintiff to the individual directors and received in return individual ballots through the mail. By letter dated December 4, he advised plaintiff that the Board "failed to take affirmative action."

Plaintiff's entire case rests ultimately on his assertion that the failure of the Board of Directors to approve his application gives him the right to recover the consideration paid for the option to purchase. He argues that no option agreement was created; and even if the instruments were viewed as creating an option, plaintiff is entitled to the return of his money under the terms of the agreement. However, the record clearly shows that plaintiff repudiated the agreements and by his own conduct prevented timely Board approval. On November 24, the last of plaintiff's attempts to rescind was rejected. Then the letter requesting permission to appear before the Board to secure approval was written on advice of counsel, who admittedly prepared the letter. The letter was dated November 25, but was not received until November 30. It was sent by certified mail to the defendant at an address where plaintiff knew defendant was not living, in spite of the fact that all prior dealings had been made through defendant's agent, Sudler & Co. The trial judge viewed the letter as written in bad faith and found as a fact that plaintiff never had any intention of going ahead with the contract.

██ A party who deliberately prevents the fulfillment of a condition on which his liability under a contract depends cannot take advantage of his own conduct and claim that the failure of the fulfillment of the condition defeats his liability. Foreman State Trust & Sav. Bank v. Tauber, 348 Ill 280, 180 NE 827. A party cannot take advantage of a condition precedent the performance of which he has rendered impossible. Goldstein v. Rosenberg, 331 Ill App 374, 73 NE2d 171.

■ The main purchase agreement specifically provided that disposition of the $5000 was to be governed by the supplemental agreement. The two agreements read together clearly show an intention to create an option for a valuable consideration. This meets the requirements for an option as expressed in the opinion of Whitelaw v. Brady, 3 Ill2d 583, 121 NE2d 785, from which plaintiff has quoted extensively in trying to show that no option was created in spite of the use of the terms optionor and optionee.

■ Defendant complied fully with her side of the agreement. Plaintiff, for personal reasons which arose near the end of the option period, no longer desired the apartment and sought to avoid the legal consequences of his prior conduct by a belated attempt pretending to go through with the option. Plaintiff not only withheld timely submission of his application for Board approval, but communicated to at least one of two close associates who were members of the Board that he no longer desired the apartment. Since plaintiff prevented the Board from approving his application in due time, his argument that the absence of such approval entitles him to a return of the $5000 consideration for the option cannot be sustained.

The judgment is affirmed.

Judgment affirmed.

FRIEND, P. J. and BURKE, J., concur.