Benjamin Brenner, J.
Plaintiff, a real estate broker, seeks to recover a commission allegedly due upon a tenant’s exercise of an option to renew its lease. The defendants assert two essential defenses: (a) lack of privity under the contract of brokerage between plaintiff and Weylin Building Company, the original owner of the leasehold, and (b) tenant’s failure to effectively exercise the option and take possession of the premises for the renewal period.
The leasehold involves two floors in an office building with many subtenants. The brokerage agreement between plaintiff and the owner, executed on March 1, 1956, provides for commissions at the customary rate u as approved by the New York Real Estate Board, ’ ’ not to be due ‘ ‘ until and unless a lease has been executed and until the tenant actually takes possession *484 of said space. ’ ’ The provision for commissions, as fixed by the New York City Real Estate Board, payable on the exercise by the tenant of an option to renew, read in 1956, as it does today: ‘ ‘ When a lease is made containing an option to the tenant for a renewal or an extension thereof, and the tenant exercises such option for renewal or • extension, the broker who consummated the original lease shall be entitled to a commission payable by the lessor on such renewal or extension period, calculated as if the same were in force at the time of commencement of the initial term ”.
The parties are in agreement that the brokerage agreement is not mentioned in the lease itself, executed in April of 1956 by Weylin, as owner, and Vida Realty Corp., the original lessee, thereafter assigned by Vida to Cooperstone Realty Corp. (Matthew Cooper was a principal of both Vida and Cooper-stone.) They differ sharply on whether the tenant, Cooperstone Realty, was in actual possession during the renewal period following June 30, 1966, the plaintiff claiming that the new corporate tenant was in fact the same tenant under a new name.
Beyond the factual issues, the parties take opposing positions as to the applicable legal principles. According tó plaintiff, commissions became due immediately at such time as the tenant, Cooperstone Realty, exercised its option to renew, despite the absence of any reference in the lease to the brokerage agreement. The defendants (though denying knowledge) say that even if they were aware of the existence of the agreement, dehors the lease, plaintiff’s agreement was purely a personal one, was unrecorded, did not run with the land, and was not one to which the defendants were privy.
The rights of the parties, affected as they are by the question of privity, are further complicated by the changes óf ownership of the leasehold since Weylin first contracted with plaintiff. The defendants acquired the leasehold in November of 1959 and thereafter exchanged it for a mortgage which, upon default of the mortgagor, required them to take control as mortgagees several months before the tenant, Cooperstone, exercised its option to renew. Thereafter, pending foreclosure, Cooperstone withdrew its option to renew in a stipulation with defendants which entitled it to remain in possession of the premises until June 30, 1966, the expiration date of the original term of the lease, which was long before the defendants reacquired the leasehold from the Referee in foreclosure.
I am satisfied that the several changes of ownership of the leasehold have no particular bearing on the rights of the parties since, generally, obligations in a lease, not running with the *485 land, do not pass to an assignee thereof unless specifically assumed by such assignee (51 C. J. S., Landlord and Tenant, § 42, subd. [d]; § 44, subd. [3]; Hart v. Socony-Vacuum Oil Co., 291 N. Y. 13; cf. Conditioner Leasing Corp. v. Sternmor Realty Corp., 17 N Y 2d 1, 4 [Keating, J. dissenting]). Nor was the intervening takeover by these defendants, as mortgagees and as purchasers in the foreclosure proceedings which followed, particularly significant since the Referee in foreclosure could create no rights or subject the new owner to any obligations or covenants not running with the leasehold (Title Guar. & Trust Co. v. 457 Schenectady Ave., 260 N. Y. 119, 125; General Meter Serv. Corp. v. Manufacturers Trust Co., 182 Misc. 184).
Notwithstanding these established principles, plaintiff insists that the tenant’s timely exercise of the option and subsequent withdrawal at the instance of defendants require a determination that the commissions were due her by operation of law though the defendants are successors of Weylin, with whom she contracted.
It will be recalled that the brokerage agreement specifically required possession on the part of the tenant to enable plaintiff to earn her initial commission. It follows, then, that continued possession on the part of the tenant could similarly constitute a condition precedent to her recovery of commissions on the renewal. Yet, while I am not persuaded by plaintiff’s testimony that the tenant’s continued possession was legally established simply because she actually saw Mr. Cooper, its officer, in the premises and he told her the tenancy was continuing after June 30, 1966, the expiration date of the original term; nor that continued tenancy presumably existed on the basis of some relationship between the officers and incorporators of the old and new tenants, these matters become irrelevant if it be a fact that the defendants axe estopped from claiming lack of possession by the tenant following the initial term — assuming an estoppel resulted from their stipulation during the foreclosure proceedings for the tenant to withdraw the exercise of its option and terminate the lease prior to the renewal period. Clearly, the foreclosure was instituted specifically for the purpose of terminating the existing tenancy and subtenancies, just as it is indisputable that the tenant actually gave notice of renewal before entering into the stipulation to vacate the premises at the end of the original lease period.
Ordinarily one must look to the brokerage agreement itself to determine when commissions are due on the renewal of a lease (Ann. 79 ALR 2d 1063). And, as has been held, the right to the commission accrues at the time notice of renewal *486 is given and accepted without objection by the landlord (Williams v. Heckscher, 126 Misc. 176, affd. 220 App. Div. 775). More significantly, even where there is no renewal, the broker may still recover where a lessor induces the tenant not to renew (Gent v. Midtown Holdings Corp., 10 A D 2d 901).
It is thus my conclusion, in light of the authorities, that even if possession by the tenant during the renewal period was not factually established, as a condition precedent to plaintiff’s recovery, the condition was waived by defendants’ action in preventing the renewal (Gent v. Midtown Holdings Corp., supra; O’Connor-Sullivan v. Otto, 283 App. Div. 269, 271; see, also, Stern v. Gepo Realty Corp., 289 N. Y. 274, 277; Amies v. Wesnofske, 255 N. Y. 156, 162-163).
The question remains whether the defendants, thus estopped from asserting lack of tenant’s possession, may nevertheless prevail upon their claim of lack of privity of contract. In this aspect of the matter plaintiff relies on defendants’ knowledge of her claim as vitiating the legal necessity for privity. It is my finding on the facts that these defendants, through their agent, Lind, unquestionably became aware of plaintiff’s claim when the option to renew was exercised by Cooperstone in May of 1965, if that awareness was not earlier actually acquired. According to the testimony adduced in behalf of defendants, an almost naive inquiry was made at the time of the assignment as to the existence of any brokerage obligation, naive in the sense that it hardly seems reasonable that the purchaser of a leasehold under such a sophisticated real estate transaction would accept an oral statement from the seller, without any inquiry at all from the readily available tenant, as to the existence of obligations for brokerage. Coupled with this perfunctory inquiry is the fact that Mr. Lind, the agent of defendants, on learning of plaintiff’s identity and interest, received a commission for the renting of the premises to Mildred Management Corp. (which might conceivably be a new tenant in name only).
Knowledge often has a strong bearing on equitable principles which may be determinative of rights and obligations. The difficulty arises when it is sought to be applied not to the principal but to his assignee. A brokerage agreement is a personal obligation which does not affect title to or the possession, use or enjoyment of real property (Richards v. Chuba, 195 Misc. 732; see, also, Magoba Mgt. v. Central Zone Prop. Corp., 1 Misc 2d 760).
As already indicated, where an obligation or covenant does not run with the land, an assignee of a lease may not be held liable thereunder, absent a specific assumption of that obliga *487 tion (Gillette Bros. v. Aristocrat Rest., 239 N. Y. 87, 90; Langel v. Betz, 250 N. Y. 159; cf. Conditioner Leasing Corp. v. Sternmor Realty Corp., 17 N Y 2d 1, 4, supra). This legal principle is stated in unmistakable language: ‘ ‘ Under a mere naked assignment, that is to say, an assignment by which the assignee assumes no greater liability than flows from the fact of assignment, the assignee’s liability is based on privity of estate only, and not on privity of contract. Hence, while the assignee under such an assignment is liable on the covenants in the lease which run with the land, he is not liable on any other covenants or agreements by which his assignor may have bound himself.” (51 C. J. S., Landlord and Tenant, § 44, subd. [3]). If an assignee of rights under a bilateral contract does not expressly assume the obligation of the assignor, it becomes a question of interpretation whether he impliedly assumed such obligation (3 Williston, Contracts [3d ed.], § 418A). The New York rule is fairly strict, however, and requires proof of the claimed assumption of duties by the assignee (O’Connor-Sullivan v. Otto, supra). Thus, mere knowledge by an assignee is meaningless in the situation at bar and, even if the defendants had knowledge of the existence of the brokerage agreement long prior to the exercise of the option, say at the very time they took the assignment of the lease, they would not be liable under the lease for the brokerage commission inasmuch as they did not undertake to perform that obligation. As the Court of Appeals said in Hart v. Socony-Vacuum Oil Co. (291 N. Y. 13, 17, supra), “It is not every reference to, or mention of, the covenants of a lease, by an assignee, that amounts to an assumption by him. Even where he covenants that his assignment is to be ‘ subject ’ to the terms of the lease, that language, without more definite words of promise, does not make him liable as hy privity of contract.”
All this merely comes to an attempt by the defendants, with knowledge, to extricate themselves from what they probably conceived to be a position of potential liability for the commissions to the plaintiff. The question, however, is not whether defendants had ample knowledge of plaintiff’s claims or whether they acted in bad faith to foil plaintiff’s rights to a commission, but whether or not they were ever legally responsible. Under the foregoing analysis of the obligations of an assignee, it appears to me that they were not.
In this connection, it also occurred to me, in an effort to view plaintiff’s cause in as favorable a light as possible, that she might be a third-party beneficiary of the leasing agreement under the theory of Lawrence v. Fox (20 N. Y. 268). (There is *488 some mention, in the lease of the obligation to pay brokerage, along with the other obligations in the event of default. Such references were merely to the landlord’s remedies upon default of the tenant and unrelated to possible obligations for commissions payable to the plaintiff upon renewal of the lease.) Thus, even if it be argued that plaintiff was a beneficiary under the lease, since certainly the brokerage agreement itself could not be the basis for the application of that theory, she would be at best an incidental beneficiary and unable to recover thereunder (2 Williston, Contracts [3d ed.], § 356; Restatement, Contracts, §§ 133, 147).
When bringing the parties together, a broker takes considerable pains to make his interest known, often attending the closing itself to protect that interest. Those who upon succeeding the broker’s obligor are asked to be bound for future claims for brokerage are surely entitled to be made party to them and to freely assume payment of such claims. This could conceivably be accomplished by the broker’s insistence not only upon clear reference in the lease to her commissions but to a requirement therein as to her future commissions. The broker may thereupon secure protection for, if the assignee assumes the obligation and accepts the benefits of the renewal of the option, he might very well be bound to the broker (cf. Conditioner Leasing Corp. v. Sternmor Realty Corp., 17 N. Y. 2d 1, supra). In the absence of such precautions, plaintiff cannot, in fairness, complain of defendants ’ claimed machinations to avoid the additional commissions.
The defendants are accordingly entitled to judgment dismissing the complaint, without costs or disbursements.