Henry J. Ehard and Jean Ehard, His Wife, Plaintiffs-Appellees, v. Pistakee Builders, Inc., a Delaware Corporation, Defendant-Appellant.

Gen. No. 68–165.

Second District.

July 28, 1969.

Franz & Franz, and Perry L. Weed, of Crystal Lake, for appellant.

Stephen R. Yost, Henley & Yost, of Cary, for appellees.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

On March 6, 1967, the plaintiffs brought suit against the defendant in the Circuit Court of McHenry County for an alleged breach of a written contract executed by them on May 10, 1965. Paragraph one of the complaint alleged that by the terms of the contract the defendant agreed to "furnish" a subdivided lot and "all the materials and

perform all the labor necessary for the complete construction of a Park Regent Model Home . . . in a substantial and workmanlike manner . . . ." The complaint further alleged that the defendant, in disregard of the contract, furnished "defective and unsuitable work, labor and materials . . ." in various particulars and asked judgment in the amount of $4,500. The defendant's answer admitted the allegations of paragraph one of the complaint, denied the allegations that the work was improperly performed and, as an affirmative defense, raised a document signed by the plaintiffs on August 28, 1965, wherein it is stated that the plaintiffs had inspected the premises and "find it fully completed in a first class workmanship-like manner."

The written contract does not contain the express provision that the construction would be done in "a substantial and workmanlike manner" as alleged in the complaint but does state that it included ". . . all labor, material and services of every kind necessary for the proper performance of the work in accordance with the plans and specifications. . . ." The contract also provided that the construction would be completed by August 15, 1965, and that the plaintiffs would not be entitled to possession of the home until they indicated "acceptance of the work by the execution of an appropriate receipt" and complete payment.

The matter proceeded to trial, with a jury waived. Henry J. Ehard testified that construction commenced in June, 1965, and that he visited the site weekly thereafter. The original plans specified that the heating would be forced warm air ". . . of sufficient capacity to heat (the) home" but the parties subsequently agreed to use a hot water system in place of hot air. In late August, Ehard went to the home with a salesman employed by the defendant and advised him that it was necessary that he obtain possession immediately although construction was not completed. Although, Ehard wanted

to hold back $1,500 from the purchase price to insure completion, it was agreed that he would release all of the funds and that the defendant would complete the construction and repair any defects. Accordingly, on August 28, Ehard signed a direction to his mortgage lender to disburse the balance of the loan proceeds to the defendant. That direction was in a form apparently prepared by the defendant and included the following:

"This is to certify that we have inspected the above-captioned building and find it fully completed in a first class workmanship-like manner, everything is in perfect working order and all work and materials are acceptable.

"We herewith accept the above building and authorize you to make complete disbursement to the builder from our loan proceeds.

"We understand labor and materials are guaranteed only for a period of one year (1 year) from this date; . . . ."

Ehard testified that he signed the direction with the verbal agreement with the defendant that all defects would be repaired. David Ladd, the secretary of Pistakee Builders testified that although he was not personally present at the conversation on August 28, such an arrangement was not unusual.

In November, 1965, Ehard first discovered that he could not adequately heat the house, that some rooms were too cold and others too hot and he complained to the defendant. Since the heating subcontractor who had installed the system was out of business, the defendant directed James Althoff, a heating subcontractor, to inspect the system and make all necessary corrections. Althoff found that the boiler was of insufficient size and on December 5, 1965, installed a new, larger boiler, additional radiators and three zone valves. Ehard was still dissatisfied and in a conversation with Althoff lost

his temper and threw a pencil and pad at a wall. Althoff returned in the spring of 1966 and added more radiation pipes along the baseboard to transmit the hot water throughout the home. Ehard and his wife testified that despite these additions the heating was still defective, some rooms were much colder than others, and a cold area existed in the center of the recreation room. Both Ladd and Althoff returned to the home but advised Ehard that nothing further could be done to balance the heat distribution until the following winter.

In October, 1966, Ehard employed C. E. Ellison to inspect the heating system and make the necessary corrections to adequately heat the home. Ellison made a chart of the home, computed the necessary BTUs to heat each room and installed an additional 55 feet of baseboard radiation pipe, an increase of almost 50% of the pipe previously installed. Ehard paid Ellison's bill in the amount of $674.48 and testified that the home was properly heated thereafter.

The presiding magistrate at the trial prepared and filed a memorandum opinion on May 21, 1968, that found that the plaintiffs had not waived their rights to have any defects repaired by their direction of August 28, 1965; that the heating system as installed by the defendant was in fact defective; that the defendant had the obligation to repair the defects and failed to do so; and that as a result the plaintiffs were damaged in the amount of $693.11, being the bill paid to Ellison and an additional $18.63 for some other expenditures by them. The memorandum also added that the action was one brought for "breach of implied warranty of fitness." Judgment was entered in favor of the plaintiffs in the amount of $693.11 on June 21, 1968, and after post-trial motions were denied this appeal was filed.

The defendant contends that (1) the contract contained no express warranties in regard to the construction of the home and that Illinois does not recognize the existence

of implied warranties in real estate sales contracts; (2) the plaintiffs were estopped from claiming any defects in the construction of the home by reason of their execution of the direction to the mortgage lender on August 28, 1965, and the terms of the contract; (3) the plaintiffs themselves prevented the completion of the contract by the defendant; (4) the determination of the trial court that the heating system was defective was against the manifest weight of the evidence; and (5) the trial court erroneously excluded evidence of an accord and satisfaction between the parties.

An exception to the general rule of caveat emptor in the sale of real estate has gained recognition in a number of jurisdictions in cases of new construction. In those jurisdictions, the courts have found an implied warranty by the builder-vendor that the house will be constructed in a substantial or workmanlike manner or will be habitable when completed. A useful discussion of the doctrine and review of the decisions is contained in 25 ALR3d 383. We agree with the defendant that some clarification on the point is needed in Illinois. In Weck v. A:M Sunrise Const. Co., 36 Ill App2d 383, 184 NE2d 728, the court found an implied warranty by a builder-vendor that a newly constructed house is fit for habitation. However, in Coutrakon v. Adams, 39 Ill App2d 290, 188 NE2d 780, the court appears to reject the doctrine despite a tortured effort to distinguish the case from Weck. The Supreme Court in Coutrakon v. Adams, 31 Ill2d 189, 201 NE2d 100, recognized the conflict and need for explication but reversed the case on other grounds. Although we agree that the point should be clarified, there is no reason to decide this case on the theory of implied warranty.

It is undisputed that the parties agreed on August 28, 1965, that the plaintiffs would take possession of the house prior to completion and that the defendant would

correct all defects thereafter if the plaintiffs would pay the balance of the agreed consideration regardless of the provisions contained in the written contract. The document signed by the plaintiffs on that date did not purport to be written evidence of that agreement but merely a direction to their mortgage lender to disburse the balance of the funds from the construction loan. Although this subsequent agreement was a modification of their written contract the defendant admitted that such a procedure was not unusual. The subsequent conduct of both parties was consistent with the agreement of August 28. The defendant did correct and complete a number of other items and made repeated, if unsuccessful, efforts to correct the heating system. It is clear, therefore, that the case involves an express agreement to correct defects and not the doctrine of implied warranty.

■■ It is true that a party to a contract may not complain of the nonperformance of the other party where that performance is prevented by his own actions. Eggan v. Simonds, 34 Ill App2d 316, 320, 181 NE2d 354; Levy v. American Automobile Ins. Co., 31 Ill App2d 157, 164, 175 NE2d 607; Foreman-State Trust & Savings Bank v. Tauber, 348 Ill 280, 286, 180 NE 827. Henry Ehard admitted that in early December, 1965, he threw a pencil and pad at a wall during a conversation with Althoff and that he may have told him on another occasion not to come back to the home. However, both Althoff and Ladd did return on a number of occasions and Althoff worked in the house as late as May of 1966. The plaintiffs did not engage Ellison until after the defendant advised them that the system could not be balanced until the following winter. Thus, the evidence does not support the argument that the plaintiffs themselves prevented the defendant from the performance of his agreement.

■■ We further find that the determination of the trial court that the heating system was defective is amply

supported by the record. The radical variations in room temperatures described by the plaintiffs are neither vague nor contradictory as contended by the defendant but an obvious result of the lack of sufficient radiation pipes in some of the rooms. According to Ehard, on at least one occasion, the temperature in the bathroom was so low that the water lines to the tub and sink froze. As we have seen, Ellison added approximately 50% more radiation pipe to the original installation. It is true that the law does not require perfection in the performance of construction contracts but only that it be completed in a substantial and workmanlike manner. Watson Lumber Co. v. Guennewig, 79 Ill App2d 377, 397, 226 NE2d 270; Surety Development Corp. v. Grevas, 42 Ill App2d 268, 270, 192 NE2d 245; T. W. Merryman Plumbing & Heating Service, Inc. v. Goodman, 10 Ill App2d 65, 134 NE2d 121. However, the defects disclosed do not appear to be trivial or unimportant.

■ Finally, the defendant complains that the trial court excluded evidence of an accord and satisfaction. During the testimony of Ehard and Ladd, the attorney for the defendant questioned them relative to a meeting in the spring of 1966 between the parties and their respective attorneys. Objections were sustained that the conversation at the meetings was privileged as an attempt to compromise the dispute. No offer of proof was made by the defendant so we are unable to consider the validity of the contention. People v. Dorsey, 66 Ill App2d 441, 444, 214 NE2d 503.

We conclude that the decision of the trial court was in all respects correct and should be affirmed.

Judgment affirmed.

MORAN, P. J. and SEIDENFELD, J., concur.