824

PODOLSKY AND ASSOCIATES, LTD., *et al.*, Plaintiffs-Appellants, *v.* CITY PRODUCTS CORPORATION, Defendant-Appellee.

First District (1st Division)    No. 80-2134

Opinion filed December 31, 1981.

Robert C. Keck, Jr., and Ruben Castillo, both of Jenner & Block, of Chicago, for appellants.

Frank M. Covey, Jr., Bruce H. Schoumacher, and William P. McCaughan, all of McDermott, Will & Emery, of Chicago, for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiffs, Podolsky and Associates, Ltd., and James H. Burns Co., Inc., licensed real estate brokers, filed an amended complaint against defendant City Products Corporation on September 26, 1979, seeking recovery of real estate brokerage commissions in the amount of $85,266.41, pursuant to a written agreement with defendant. Plaintiffs and defendant moved for summary judgment, and the trial court granted defendant's motion for summary judgment and denied plaintiffs' motion. Plaintiffs have appealed.

The only issue presented for review is whether a broker who has found a tenant for a landlord is entitled to recover the commissions the landlord contracted to pay the broker upon the tenant's exercise of the renewal options in the lease, where the act of the landlord in entering into a new and different contract with the tenant has eliminated the exercise of the renewal options.

The undisputed facts set forth in the pleadings and supporting affidavits established that on April 1, 1968, defendant City Products Corporation leased commercial property located at 1600 Busse Road, Elk Grove Village, Illinois (the property), from Exchange National Bank as trustee. Herst-Allen Co., a subsidiary of defendant, occupied the property. The lease of April 1, 1968, had a base term of 15 years commencing November 1, 1968, with five options to renew by successive extensions of five years each. In early 1972, defendant and Herst-Allen Co. decided that neither had further use for the property, and defendant made known to a number of real estate brokers, including plaintiff Podolsky and Associates, Ltd. (Podolsky), that it was interested in securing a subtenant for the property. Podolsky showed the property to Mazda Motors of America, Inc. (Mazda), and negotiations for a sublease between defendant and Mazda ensued. On June 7, 1972, defendant executed a written agreement to pay Podolsky and James H. Burns Co., Inc. (Burns), an affiliated real estate broker, a commission of $53,424 in the event a sublease of the property was executed between defendant and Mazda. The agreement also provided that plaintiffs would receive additional commissions totalling $85,266.41 when the renewal options of the sublease were exercised. These options paralleled defendant's prime lease and could extend the sublease a total of 25 years. Plaintiffs were successful in procuring Mazda as a subtenant of defendant, and on June 27, 1972, defendant and Mazda executed a sublease for the property. Pursuant to the written commission agreement defendant paid plaintiffs $53,424 for the original term of the sublease.

On February 7, 1975, Mazda assigned its sublease to Mazda Motors of America (Central), Inc. (Mazda Central), an affiliate of Mazda, with defendant's consent. In the spring of 1978, Mazda Central decided to assign or sublease its interest in the property, and negotiations were entered into with Baird & Warner Mortgage & Realty Trust for the assignment of Mazda Central's leasehold interest to it. On August 14, 1978, an agreement was entered between defendant and Mazda Central which provided for the transfer of defendant's interest in the property to Mazda Central for the sum of $168,000. This transaction was consummated September 1, 1978, when defendant assigned its prime lease to Mazda Central. That same day Mazda Central assigned the prime lease and the sublease to the 1600 Busse Joint Venture, a joint venture of Baird & Warner, Inc., and LNC Development Corporation. Plaintiffs brought this action to recover the real estate brokerage commissions they would have been entitled to if the five options to renew had been exercised. In granting defendant's motion for summary judgment the trial court held that absent any allegation of fraud, the only way to enforce the contract was by its terms, and that the terms had not been met.

826

Plaintiffs urge that defendant became liable to them for the renewal commissions it expressly agreed to pay, as a matter of law, when defendant terminated the sublease with Mazda Central, rendering impossible the exercise of the renewal options therein. Plaintiffs rely on a principle of contract law set forth in *Eggan v. Simonds* (1962), 34 Ill. App. 2d 316, 181 N.E.2d 354, where the court stated:

> "A party who deliberately prevents the fulfillment of a condition on which his liability under a contract depends cannot take advantage of his own conduct and claim that the failure of the fulfillment of the condition defeats his liability. [Citation.] A party cannot take advantage of a condition precedent the performance of which he has rendered impossible." (34 Ill. App. 2d 316, 320, 181 N.E.2d 354, 356. See 5 Williston, Contracts §677, at 224 (3d ed. 1961).)

Plaintiffs contend that Illinois courts have consistently applied this doctrine to protect brokers' commissions by finding that a broker's commission conditioned upon the consummation of a transaction is earned if the transaction fails due to the actions of the principal. (*Western Pride Builders, Inc. v. Zicha* (1974), 23 Ill. App. 3d 770, 320 N.E.2d 181; *Haas v. Cohen* (1973), 10 Ill. App. 3d 896, 295 N.E.2d 28.) Plaintiffs also urge that defendant is liable to them for the renewal commissions even though the sublease was not renewed because defendant entered into a new transaction with the subtenant procured by plaintiffs. Both parties assert that Illinois courts have not considered whether a landlord is liable for renewal commissions which the landlord has expressly agreed to pay where the landlord has terminated the old lease and made a new lease arrangement with the tenant before the commencement of the renewal periods provided in the commission agreement. However, plaintiffs allege that other jurisdictions, notably New York, Ohio, New Jersey, Kentucky, Massachusetts, Pennsylvania, Louisiana, and Delaware, have considered this issue and awarded brokers their renewal commissions under such circumstances. (*Spivak v. Madison-54th Realty Co.* (1969), 60 Misc. 2d 483, 303 N.Y.S.2d 128; *William P. Zinn & Co. v. Shawnee Pottery Co.* (S.D. Ohio 1955), 148 F. Supp. 322; *Consolidated Realty Co. v. Graves* (1942), 291 Ky. 456, 165 S.W.2d 26; *Louis Schlesinger Co. v. Kresge Foundation* (D. N.J. 1964), 236 F. Supp. 373; *Leitner v. Foster* (1932), 280 Mass. 128, 181 N.E. 857; *Rosenblum v. Lurie* (1937), 128 Pa. Super. 480, 194 A. 204; *Zuzak v. Querbes* (La. App. 1939), 193 So. 258; and *Emmett S. Hickman Co. v. American Realty Enterprises, Inc.* (Del. Super. 1971), 277 A.2d 688.) Plaintiffs urge this court to follow those decisions of the jurisdictions they rely on and find that defendant is liable to them for the renewal commissions because defendant, pursuant to its new transaction with the subtenant, received a bargained for lump sum payment accept-

able to it in lieu of the continued income it would have realized under the lease renewals.

Defendant urges that the trial court properly granted its motion for summary judgment and denied that of plaintiffs because this case is not one in which an offeror prevented the fulfillment of a condition precedent, but rather a case concerning real estate brokerage commissions controlled by Illinois law which is that a broker is entitled to commissions only where he either (1) is the procuring cause of a transaction, or (2) is entitled to commissions under the terms of a contract. (*Bennett v. Seay* (1979), 73 Ill. App. 3d 944, 392 N.E.2d 609.) Contrary to plaintiffs' contentions, defendant claims that renewal of the sublease is not a condition precedent to liability, but a contingency upon which liability depends. (*Lighthart v. Lindstrom* (1975), 24 Ill. App. 3d 918, 322 N.E.2d 70.) In the instant case the brokerage commission agreement between the parties provided that in the event Mazda executed a sublease with defendant, defendant would pay plaintiffs a commission of $53,424. The sublease was executed and the initial commission was paid. The agreement further provided that defendant would pay plaintiffs a specified amount within 90 days after the exercise of each five-year option to renew the sublease. This agreement governs plaintiffs' right to receive additional commissions, and since the subtenant never exercised any renewal options, defendant claims that plaintiffs never became entitled to additional commissions. (*Bennett v. Seay* (1979), 73 Ill. App. 3d 944.) Moreover, plaintiffs played no part in the negotiations between defendant and Mazda Central for the subsequent assignment to Mazda Central of the prime lease. *Bennett v. Seay.*

We have examined the Illinois cases cited by plaintiffs and the cases cited from other jurisdictions, and we do not find these cases supportive of plaintiffs' position. The parties have not called to our attention any Illinois cases where the issue of renewal commissions was discussed. The decisions in both *Western Pride Builders, Inc. v. Zicha* (1974), 23 Ill. App. 3d 770, and *Haas v. Cohen* (1973), 10 Ill. App. 3d 896, were based on a finding that the broker had been the procuring cause of a sale by producing a buyer who was ready, willing and able to purchase, and by virtue thereof the broker could not be subsequently deprived of his commission when the owner completed the transaction himself or through another broker. Plaintiffs herein were not involved in the assignment transaction between defendant and Mazda Central and do not allege that they were the procuring cause of the assignment of the prime lease from defendant to Mazda Central. Moreover, we find the *Eggan* case supportive of defendant's position. In *Eggan v. Simonds* (1962), 34 Ill. App. 2d 316, the trial court held that the plaintiff had acted in bad faith in repudiating the agreement which was the subject of the lawsuit, and

could not benefit from his act of bad faith. The reasoning expressed in *Eggan* was employed by the New York, Massachusetts, and Delaware courts to award renewal brokerage commissions in the absence of the exercise of options to renew where the respective trial courts found that bad faith efforts on the part of the landlord were the cause of nonrenewals. (*Spivak v. Madison-54th Realty Co.; Leitner v. Foster; Emmett S. Hickman Co. v. American Realty Enterprises, Inc.*) The other cases cited by plaintiffs are inapposite, for in those cases renewal commissions were awarded because the landlord-tenant relationship persisted albeit on different terms, whereas the landlord-tenant relationship herein has been terminated. (*William P. Zinn & Co. v. Shawnee Pottery Co.; Consolidated Realty Co. v. Graves; Louis Schlesinger Co. v. Kresge Foundation; Rosenblum v. Lurie; Zuzak v. Querbes.*) The record in the instant matter supports defendant's contention that the complained-of transaction between defendant and its tenant was based on business judgment and undertaken in good faith. There is no suggestion that the broker was the target of the assignment transaction, or that it was entered in an attempt to deprive the broker of its commission. Plaintiffs have not alleged fraud or bad faith on the part of defendant, and in the absence of such allegations, the contract between the parties must be enforced by its terms. (*Bennett v. Seay* (1979), 73 Ill. App. 3d 944; *Nardi, Pain & Podolsky, Inc. v. Vignola Furniture Co.* (1967), 80 Ill. App. 2d 220, 224 N.E.2d 649.) Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

GOLDBERG and O'CONNOR, JJ., concur.