**Donald C. GRIFFITH and John M. Groves, d/b/a Griffith and Groves Real Estate Company, a Partnership, Plaintiffs,**

v.

**SECO COMPANY, Inc., a Corporation, Defendant-Appellant,**

and

**Carl G. Stifel Realty Company, a Corporation, Defendant-Respondent.**

No. 32409.

St. Louis Court of Appeals.

Missouri.

Dec. 20, 1966.

Motion for Rehearing or for Transfer to Supreme Court Denied Jan. 17, 1967.

**692**

Michael D. O'Keefe, Daniel P. Reardon, St. Louis, for defendant-appellant.

Hocker, Goodwin & MacGreevy, St. Louis, for plaintiffs.

Stamm, Millar & Neuhoff, David L. Millar, Ray E. White, Jr., St. Louis, for defendant-respondent.

ANDERSON, Judge.

This cause was originally filed by plaintiffs against Seco Company, Inc., to recover an amount alleged to be due plaintiffs as a real estate commission for services in connection with the lease of certain premises belonging to defendant on which there was an industrial building. Thereafter, plaintiffs filed an amended petition joining Carl G. Stifel Realty Company, a corporation, as a defendant upon its refusal to join as a party plaintiff in said action. This amended petition was in two counts. Count I was for damages for breach of contract to pay a commission alleged to have been earned by plaintiffs and Stifel as a result of the negotiation by them of the lease of the premises, and Count II was for the reasonable value of plaintiffs' services in connection with said negotiations. Defendant Stifel filed its answer and a cross claim against defendant Seco. The cross claim was in four counts as follows: Count I for a breach of contract in failing to pay a real estate commission alleged to be due upon the exercise by the tenant of the option to renew contained in the lease; Count II for the reasonable value of services rendered in connection with said renewal; Count III for breach of contract in failing to pay a commission upon a second renewal of the lease by the tenant; and Count IV for the reasonable value of services performed in connection

with said second renewal. Defendant Seco joined issue by filing an answer to said cross claim. Thereafter, plaintiffs dismissed their cause of action, and a trial was had on the issues raised by defendant Stifel's cross claim and Seco's answer thereto. At the close of all the evidence, defendant Stifel dismissed Counts II and IV of said cross claim, and filed a motion for a directed verdict as to Counts I and III, which the court sustained, and directed a verdict in favor of defendant Stifel, and against defendant Seco in the sum of $4,222.36 on each count. Judgment was thereupon entered on said verdicts in the aggregate sum of $8,444.72. From this judgment, defendant Seco has appealed.

On July 28, 1955, appellant entered into a contract with Carl G. Stifel authorizing the latter to list for sale premises owned by it located in the City of St. Louis. Thereafter, and on February 3, 1956, the listing was extended for a period of six months from January 28, 1956, and new terms added to the agreement. This was accomplished through a letter from Stifel to Seco, dated February 3, 1956, signed by Mr. F. B. Martin, executive vice-president of Stifel, and accepted on behalf of Seco by its president, Dan C. Muckler. The terms of this new agreement, material on this appeal, are set out in said letter and are as follows:

"As per our verbal agreement of yesterday, it is agreed that our listing for the sale of your properties located on South Thirty-Eighth Streets, known as Building No. 2 and Building No. 3 is to be extended for a period of six months from January 28, 1956.

"The properties are to be offered for sale on the same terms, price and conditions.

"Also we are to offer these properties for lease at a rental of 55¢ a square foot for Building No. 2 and 60¢ a square foot for Building No. 3. You are to pay the taxes, hazard insurance and maintain the roofs, outside walls and downspouts.

The minimum term of lease is to be not less than ten years.

"In the event that this property is leased, our leasing commission is to be three per cent on the total amount of the lease. * * * "

On August 3, 1956, Seco leased to Western Electric Company, Incorporated, a New York Corporation, the premises described in said lease as " * * * Land and a one and two story building known as premises 5200-42 38th Street, bounded by 38th Street, Walsh Street, Eichelberger Street and an alley; for the term of five (5) years beginning September 1, 1956, and ending August 31, 1961, with option in the Lessee to extend the said term for two (2) additional periods of three (3) years each, by written notice sent to the Lessor six (6) months before the then current expiration date. * * * " The building referred to in the description of the premises was the Building No. 3 referred to in the letter from Stifel to Seco, heretofore set out. The lease further provided: "And the Lessee, in consideration of the leasing of the premises as aforesaid by the Lessor to the Lessee, hereby covenants and agrees to pay to the Lessor as rent for the said demised premises for the said term of five (5) years, the sum of TWO HUNDRED TWENTY-EIGHT THOUSAND SEVEN HUNDRED FIFTY and 00/100 DOLLARS ($228,-750.00), payable monthly in advance in installments of THREE THOUSAND EIGHT HUNDRED TWELVE and 50/100 DOLLARS ($3,812.50) on the first day of each and every month of said term, and at the same rate during any extension of said term, * * *."

Stifel represented appellant in the negotiations with respect to this lease, and Western Electric was represented by plaintiffs. There was an agreement between the two real estate firms that plaintiffs would be paid 45 percent of the commission collected by Stifel from Seco. During the latter part of 1956, Seco paid Stifel the sum of $6,862.50, said sum being three per

cent of the rental specified in the lease for the five year term beginning September 1, 1956. Out of the amount received, Stifel paid plaintiffs $3,088.12.

On January 30th, 1961, Western Electric, by letter, notified defendant, Seco, that it chose to exercise the first three year option under the lease. There is no evidence that Stifel performed any service in securing the extension of the lease for this additional period. Again in February, 1964, Western Electric chose to exercise the second option provided for in the lease. This was accomplished without any assistance from Stifel. In fact, both options were exercised strictly in accordance with the terms of the lease.

Subsequent to the exercise of the first option, in a letter dated May 19, 1961, Stifel advised Seco that plaintiffs had advised them of the exercise by Western of the first option and plaintiffs were billing Stifel for their share of a three percent commission of the rental for the extended period.

Appellant contends that the trial court erred in denying its motion for a directed verdict on Counts I and III, and in directing a verdict for respondent on said Counts, for the reason that there was no agreement to pay a commission upon the exercise of the options.

Respondent's right to commissions was based upon a written contract which provided that the commission would be three percent of the total amount of the lease. Respondent negotiated a lease for a five year period. When this lease was executed, a tenancy for five years was created. Western Electric was bound for that term and no longer, and when the lease was executed, respondent earned its commission. Respondent was paid a commission of three percent of the rental provided for in the lease, which was, in our judgment, all that respondent was entitled to receive, notwithstanding the fact that Western Electric chose to extend the lease on two occasions. When Western Electric exercised

its option, a new relationship of landlord and tenant was created, whether it be termed a renewal or an extension. Bussen v. Del Commune, 239 Mo.App. 859, 199 S.W.2d 13, 1. c. 21. In that case the court stated that the courts of this state made no distinction between a renewal and an extension unless a new lease is specifically required with terms different from those of the old. The court then held that when the tenants exercised their option to renew upon the identical terms and conditions as expressed in the original instrument, a new tenancy was created even though the lessor refused to comply with the formality of executing a new lease as contemplated by the old lease.

There seems to be a dearth of authorities on the precise point at issue here, and none squarely in point in this state. The New York cases of Mullen & Woods, Inc. v. 615 West 57th Street, Inc., 146 Misc. 599, 262 N.Y.S. 467, and Allwin Realty Co. v. Barth, 161 App.Div. 568, 146 N.Y.S. 960, deal with the subject at hand and announce rules in support of appellant's position. In the Mullen & Woods, Inc., case, it was urged that there was an implied promise to pay an additional commission in the event the tenant exercised its option to renew the lease. In disposing of this contention, the court said:

"In the absence of special agreement, the plaintiff would not be entitled to commissions on subsequent extensions of which it was not the procuring cause. Nor could the plaintiff recover on the theory that by securing the inclusion of the renewal clause in the original lease it performed services which were of benefit to the defendant. On the contrary, by assenting to the clause which gave the tenant the option of renewal, the defendant subjected itself to a liability without corresponding benefit. Indeed, the plaintiff made no attempt to prove that its services in procuring such an option in the original lease were of any value to the defendant, and it is manifest that it could not do so."

In Allwin Realty Co., v. Barth, supra, the owner of the premises employed plaintiff, a real estate agent, to secure a tenant for her premises, agreeing to pay as a commission one percent of the amount received as rent. Plaintiff negotiated a lease which ran for a term of six years and nine months. The agent was paid a commission based upon the amount of rent during the first term of six years and nine months, then brought suit for an additional commission based on the amount of rent to be received during the renewal term. On this state of facts, the court said:

"* * * I think that under his employment that was all the commission to which the broker was then entitled. This term demised of six years and nine months was from August 1, 1904, and that was the term of the lease. It covered all the rent which was received under the lease made by the tenant procured by the broker. The covenant of renewal was entirely at the option of the tenant, and whether or not there should be a renewal of the lease could not be determined until the time when the tenant was called upon to give the notice by which he was to exercise his option. Certainly the broker would not, when the lease was executed, be entitled to sue for and recover commission based upon the amount of rent that should be paid if the tenant did exercise his option to take a new lease for a second term of seven years. All that the tenant whom the broker procured agreed to pay was the rent for the term of six years and nine months, which was the term demised, and it seems to me clear that the rent during such term was all the rent that was secured to be paid by the lease and on which the broker was entitled to his commission."

We have found no case which holds that a real estate agent is entitled to recover commissions on a renewal or extension of a lease, absent an express provision in the brokerage agreement for same. See Annotation in 79 A.L.R.2d 1068.

Respondent has cited the case of Laughlin v. Terry, Mo.App., 110 S.W.2d 838. This was a suit by a lessor against a real estate agent he had employed to secure for him the lease, for recovery of one half the commission paid upon the execution of the lease, on the theory that since the lessee had exercised an option to terminate the lease at the end of the first year of the lease which was for a two year term, defendant had not earned the part sued for. There was a judgment for plaintiff and defendant appealed. The judgment was affirmed.

The contract provided: " 'I hereby agree to pay Albert T. Terry, Son, & Company a commission of five per cent of the gross amount of rentals of any lease accepted by me on #5 Fair Oaks, St. Louis County, said commission to be paid to Albert T. Terry, Son & Company upon consumation of any lease by said Albert T. Terry, Son & Company.' "

The lease was for two years, ending October 20, 1935, at $250 per month, with the right of lessee to terminate the lease during the first year by giving 90 days notice. On July 17, 1934, the lessee gave notice he would terminate the lease on October 20, 1934, and thereafter, the lessor demanded $150, one half the commission paid which she claimed was unearned. Defendant claimed he was entitled to five percent of the amount of rentals payable under the lease for the full term of the lease, i. e. two years, contending that the clause, " 'a commission of five per cent on the gross amount of rentals' " means on the maximum amount. The court in disposing of this said, "Of course, the clause has no such meaning. It obviously means the gross amount of rentals the lessee is bound to pay, or becomes bound to pay through the lapse of options, under the provisions of the lease."

In the case at bar, respondent secured a lease under which the lessee was bound for a term of only five years. It was paid a commission for that service, and is not entitled to further compensation.

The judgment of the trial court is reversed and the cause is remanded with directions to enter judgment for defendant.

WOLFE, P. J., and RUDDY, J., concur.