Arthur E. Blyn, J.
Plaintiff sued defendant for brokerage commissions arising out of a sublease admittedly negotiated and obtained by the plaintiff, a real estate broker, on behalf of a *635 predecessor of the defendant, the lessee under a major lease with the owner of the property. The sublease drawn by the broker included two provisions pertinent to this litigation, paragraphs 44 and 62, which read as follows:
“ Paragraph 44. The Landlord, in appointing Rosenfeld Realty Co. his Rental Agent herein, does so for and in consideration of its services in securing the tenant herein and the negotiation of this agreement, and agrees to pay said Agent a commission of five percent (5%) of all rentals paid during the full term of this agreement and/or any renewal or extension thereof, or the continued occupancy of the herein premises by said Tenant, his heirs, administrators or assigns, and the Landlord does hereby appoint said Rosenfeld Realty Co. his true and lawful attorney-in-fact to collect said rent, and the Tenant is hereby authorized to make such payment of rent to Rosenfeld Realty Co., during the full term of this agreement and/or any renewal or extension thereof, or the continued occupancy of the herein premises by said tenant, his heirs, administrators or assigns, and the Rosenfeld Realty Co. is authorized to deduct therefrom the said five percent (5%) commission. This provision shall survive the transfer or assignment of this agreement and/or any sale or conveyance of the herein demised property. (See paragraph 62).”
“ Paragraph 62. It is hereby warranted by Rosenfeld Realty Company that they are the sole brokers and are not associated with anyone else in this matter, and no other persons, firm or corporation to their knowledge has rendered any service as broker or otherwise in connection with this transaction. The above agency agreement shall survive the transfer or assignment of the lease and/ or sale or conveyance of the lease under which the premises are leased. The Landlord has a right to cancel the agency agreement upon payment in cash for the balance of commissions due, computed by multiplying five (5%) percent times the balance of the rent due on the original term, as well as the renewal thereof, if renewal is exercised.”
There were a number of amendments to the sublease during its original term and it was renewed for an additional five years upon the expiration of the original five-year term. At the end of the second five-year term the sublease was extended by written agreement for an additional period of seven years and nine months terminating on December 31, 1976. The last extension agreement stated that the extended term would be under the same terms and conditions of the original sublease as amended, thus including the afore-mentioned paragraphs 44 and 62.
*636 The payment of rent to the plaintiff by the tenant and the deduction therefrom by the plaintiff of its 5% commission as provided in paragraph 44 continued from the inception of the original sublease, through the period of the renewal and up to and including the month of February, 1971, during the term of the final extension agreement, without objection by the defendant.
¡ The defendant on March 25, 1971 advised the plaintiff that as of March 1, 1971 ‘ ‘ you are no longer responsible to collect the rent from the Dart Drug Corporation [the sublessee] and that we will ho longer pay to you the commissions as provided in Section 44 and Section 62 of the sublease agreement.”
Thereafter with the exception of the rent for the month of March, 1971, which was paid after some controversy, no further rent was paid by the sublessee and no commissions were paid to the plaintiff by the defendant. At that time there remained 69 additional months on the final extension agreement of the sublease. The monthly rent was $1,000. Plaintiff thereupon commenced this action for broker’s commissions based on the rate of 5% of the remaining 69 months’ rent.
The defendant, shortly after its letter of March 25, 1971 to the plaintiff, negotiated settlement agreements with the tenant (sublessee) and the owner (the lessor under the main lease) terminating the sublease and releasing the sublessee from its obligations under the terms of the sublease and securing a release from the owner of the defendant’s obligations under the terms of the major lease. The sublessee paid the defendant the sum of $11,250 in consideration for its release. The defendant paid the owner $22,500 as consideration for its release. Both settlement agreement and mutual releases included an indemnification clause running from the defendant to the sublessee and the owner against any claim which might arise ‘6 in connection with any action taken by cadence, or any of its affiliates, in terminating its agreement with Rosenfeld Realty Company.”
There was testimony by the defendant’s witness to the effect that the sublessee had discontinued its retail operation at the leased premises because of large losses and that in an effort to avoid further losses was threatening to terminate its sublease on the grounds of defendant’s failure to repair boilers and make other major repairs to the premises. These repairs were apparently actually needed and were the obligation of the defendant under the terms of the sublease. Further, that prior to 1971 and possibly as far back as 1962 the defendant had been sustaining losses of at least $10,000 per year at the leased premises. *637 The witness for the defendant, its assistant general counsel and assistant secretary, testified that it was a policy decision of the defendant corporation to terminate leases at all locations where it had been losing money.
The defendant takes the position that1‘ The entire motivation arose from economics of the transaction and not for the purpose of depriving plaintiff of commissions.” This distinction is without a real difference. If indeed the defendant had intentionally caused damages to the plaintiff, such action would make the defendant liable under the law of torts without reference to the commission agreement. The fact that performance of the terms and conditions of its lease had become economically unprofitable because of the increased cost of maintenance, increased taxes, and other expenses, is no excuse for nonperformance. (City of New York v. Interborough R. T. Co., 136 Misc. 569, affd. 232 App. Div. 233, affd. 257 N. Y. 20; Lowe v. Feldman, 11 Misc 2d 8, affd. 6 A D 2d 684; 407 East 61st Garage v. Savoy Fifth Ave. Corp., 23 N Y 2d 275.)
Were it otherwise a contract would mean nothing since any party would be able to escape its obligations whenever they reflected a bad bargain. The very essence of a bilateral contract is the mutuality of obligations. The freedom of each contracting party is limited by the degree to which obligations are undertaken towards others in return for benefits or consideration accorded. These obligations must be regarded seriously and upheld steadfastly despite adverse circumstances if the contract is to remain a viable mechanism for commercial transactions. (Cameron-Hawn Realty Co. v. City of Albany, 207 N. Y. 377; C & C Blaschka, Inc. v. Frazer, 32 A D 2d 774, affd. 30 N Y 2d 645; also, see, Vidur v. M & L Development Corp., N. Y. L. J., Jan. 25, 1973, p. 19, col. 2.) The defendant goes on to its next defense, that the language of paragraphs 44 and 62 provided only for the payment of commissions when and if rents were actually paid and that when rent payments ceased the obligation to pay commissions ceased. The defendant refers to this payment of rent before obligation to pay commissions as a precondition. No payment of rent, the precondition becomes operative, and no obligation to pay commissions is the claimed result.
It was, however, the deliberate, intentional and willful termination by the defendant of the sublease which caused the cessation of payments of rent. It made the precondition an impossibility. It should not be permitted to benefit from its own act of termination. (Tradewell Foods v. New York Credit Men’s Adj. Bur., 179 F. 2d 567; Young v. Hunter, 6 N. Y. 203; Wagner v. *638 Derecktor, 306 N. Y. 386.) The defendant then goes on to a further defense and argues that the failure of the plaintiff (the draftsman of the sublease) to include a specific provision as to what the obligation of the defendant would be with reference to the payment of the commissions in the event of a termination by the defendant for reasons other than bankruptcy of the sub-lessee, assignment for the benefit of creditors by the sublessee, and total destruction of the premises (all provided for in the sublease), is proof that a termination for any reason, including one caused by economic circumstances, ended the obligation to pay commissions. This contention is based on a rule of legal construction known as expressio unius est exclusio alterius, which, translated, means the express mention of one thing implies the exclusion of another different thing. This is a rule used as an aid in arriving at intention but is not used to defeat an apparent intention. The court cannot see the applicability of this maxim to this case. The apparent intention of the parties, all experienced and sophisticated business people was clearly set forth in the sublease. The last sentence of paragraph 62 which reads ‘1 The Landlord has a right to cancel the agency agreement upon payment in cash for the balance of commissions due, computed by multiplying five (5%) percent times the balance of the rent due on the original term, as well as the renewal thereof, if renewal is exercised ” is very explicit in setting forth just how the brokerage agreement could be terminated for any reason other than those contained in the sublease.
The defendant then raises another defense, that in a motion for summary judgment, brought on by the plaintiff and denied, certain language in that decision became the law of the case. The court disagrees. The only issue determined by the court in denying the motion was that ‘ ‘ an issue of fact exists which can only be decided at trial.”
Finally the defendant argues that where a broker negotiates a lease for property and the lease is subsequently renewed, the broker must prove certain elements in order to prevail in a suit for commissions on the renewal (citing Mitchnik v. Brennan, 159 Misc. 287; Schultz & Co. v. Realty Assoc., 17 N. Y. S. 2d 924).
The court in these cases set forth three requirements before a broker would be entitled to commissions on renewals of a lease. These are: (1) a special agreement between the broker and the lessor (Mullen & Woods v. 615 W. 57th St., 146 Misc. 599); (2) compliance with (at that time) former section 31 of the Personal Property Law (now section 5-701 of the General Obligations Law, known as the statute of Frauds) (Allwin Realty Co. *639 v. Barth, 161 App. Div. 568) a.nd (3) that the renewal was for the same term and rent (Tracy v. Albany Exch. Co., 7 N. Y. 472). The courts also stated that in the event of failure to prove (3), there must be proof that the renewal was the result of services performed by the broker (Allwin Realty Co. v. Barth, supra).
In this case there was a special agreement set forth in paragraphs 44 and 62 of the sublease; there was compliance with section 31 of the Personal Property Law in that the agreement was in writing, again as set forth in paragraphs 44 and 62; and in lieu of 3, in that the final renewal (extension) was not for the same term, there was evidence indicating services by the broker in connection with the renewal (extension). It is also significant that during the term of the final renewal (extension) and prior to the termination by the defendant of the sublease, it received rent from the sublessee through the plaintiff, from which commissions were deducted by the plaintiff without objection by the defendant. This was evidence that the defendant recognized the role of the plaintiff and his services and the binding nature of the special agreement. The court makes these findings of fact and law and awards judgment to the plaintiff in the sum of $3,450 with interest from April 1, 1971 together with costs and disbursements.