AUDIO–VISUAL MARKETING CORPO-
RATION et al., Appellants and
Cross-Appellees,

v.

OMNI CORPORATION et al., Appellees
and Cross-Appellants.

Nos. 75–1553, 75–1554.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted May 17, 1976.

Decided Nov. 29, 1976.

Timothy T. Tierney, Los Angeles, Cal. (de Krassel & Tierney and Robert E. Melton of Miller & Melton, Ltd., Albuquerque, N. M., on the brief), for appellants and cross-appellees.

George A. Dubois, Albuquerque, N. M. (Frank P. Dickson, Jr. of Dickson & Dubois, P. A., Albuquerque, N. M., on the brief), for appellees and cross-appellants.

Before LEWIS, Chief Judge, McWILLIAMS, Circuit Judge, and ZIRPOLI,* District Judge.

McWILLIAMS, Circuit Judge.

This is a dispute between a manufacturer and its erstwhile sole and exclusive distributor. John P. Cline, an electrical engineer, invented a machine designed to drill children in arithmetic. Cline called the device a Multiputer, and he described its operation as follows:

> It's a teaching device. One could liken it to flash cards. We are all familiar with flash cards that teachers use to drill students in arithmetic. The Multiputer is an electronic way of doing that so that ran-

---

* Of the Northern District of California, sitting by designation.

dom numbers are presented to the student, like the machine will indicate "Three plus five equals what?" Then there's a keyboard where the student can enter a response. The machine then determines whether the student's answer was correct or incorrect.

Omni Corporation, a New Mexico corporation, was formed by Cline for the purpose of manufacturing the Multiputer. Omni entered into a contract with Audio-Visual Marketing Corporation (AVMC), a California corporation, whereby the latter became the sole and exclusive distributor for the Multiputer. AVMC thereafter sold the Multiputer to various dealers, and others, and Omni, at the direction of AVMC, shipped the machines directly to the purchaser. However, Omni billed AVMC for the machines thus sold, and AVMC in turn made periodic remittances to Omni.

About the end of March 1974, Omni notified AVMC that it had decided to discontinue production of the Multiputer and Omni at that time ceased selling Multiputers to AVMC. Some short time thereafter AVMC came out with a machine which it called a Digitor, which Omni thought bore a striking resemblance to the Multiputer. In the meantime Cline formed Cybernetic Systems, Inc., another New Mexico corporation, which took over both the manufacture and distribution of the Multiputer.

It was in this general setting that Omni brought suit against AVMC in the United States District Court for the District of New Mexico for Multiputers sold to AVMC for which Omni had not been paid. Later, on the same day that this suit was filed in New Mexico, AVMC instituted proceedings in the United States District Court for the Central District of California against Omni and Cybernetic for unfair competition. The district court in California stayed further proceedings in the case before it, and AVMC asserted its claim based on unfair competition in the present proceeding by way of counterclaim.

Cybernetic was added to the present proceeding as a party plaintiff, and by way of an amended complaint, Omni and Cybernetic asserted four claims against AVMC. Count one, as indicated, was based on AVMC's failure to pay for certain merchandise shipped by Omni to AVMC on what was said to be an open account. The jury returned a verdict for Omni on count one in the sum of $60,000. Count two was a claim by Omni and Cybernetic for damages based on breach of contract and unfair competition. The trial court granted a directed verdict in favor of AVMC on count two. Count three was withdrawn by the plaintiffs at trial. Count four was an action for damages based upon alleged interference by AVMC with the business relationship between Omni and Cybernetic and the Fidelity National Bank, located in Albuquerque, New Mexico, which bank had been financing the plaintiffs in their development of the Multiputer. The jury returned a verdict in favor of AVMC on count four. As concerns AVMC's counterclaim based on unfair competition, the jury returned a verdict in favor of Omni and Cybernetic.

Judgment was entered in favor of Omni on count one in the amount of $60,000. Judgment was entered against Omni and Cybernetic on their remaining claims, and in favor of Omni and Cybernetic on AVMC's counterclaim. Omni and Cybernetic, as well as AVMC, appeal the judgment of the trial court.

Perhaps the principal matter urged in this court concerns the refusal of the trial court to award Omni attorney's fees in connection with the $60,000 judgment entered in its favor on count one of the complaint. A New Mexico statute authorizes the allowance of reasonable attorney's fees in a civil action based on an open account. In this regard Omni argues first that as a matter of law the claim asserted in count one was based on open account, and that therefore, under New Mexico statutory law, it was entitled to an award of attorney's fees. Alternatively, Omni argues that the question as to whether the claim asserted in count one is one based on open account depends upon the intent of the parties, and that under the circumstances, the issue should have been submitted to the jury.

AVMC argues to the contrary that the claim in question was, as a matter of law, not based on open account, and that hence under the New Mexico statute attorney's fees could not be allowed. The argument in this court relating to attorney's fees is mainly concerned with the question as to whether the claim in count one is on open account. In thus arguing, we think both of counsel have misconceived the effect of the New Mexico statute.

At the outset it is agreed that the allowance of an attorney's fee in the instant case is a matter to be resolved under New Mexico law. *Toland v. Technicolor, Inc.,* 467 F.2d 1045 (10th Cir. 1972). Looking, then, to New Mexico law, N.M.Stat.Ann. § 18–1–37 (1953) provides as follows:

> Collection of open accounts—Attorney fees.—In any civil action in the district court, small claims court, or magistrate court to recover on an open account, the prevailing party *may* be allowed a reasonable attorney fee set by the court, and taxed and collected as costs. (Emphasis added.)

■ It is at once apparent that the aforesaid statute is discretionary in nature, not mandatory, even assuming that the claim be one to recover on an open account. It would also appear from a reading of the statute that the awarding of an attorney's fee is a matter for the court, and not one to be resolved by a jury.

■ *Trujillo v. Romero,* 82 N.M. 301, 481 P.2d 89 (1971) sheds light on the present controversy. In *Trujillo* the New Mexico Supreme Court refused to be drawn into an argument as to whether a particular obligation was, or was not, an open account. Instead, the New Mexico Supreme Court held, in effect, that even assuming, *arguendo,* that the obligation there in question was an open account, it was still discretionary with the court as to whether an attorney's fee should be allowed. In this latter regard, the New Mexico Supreme Court went on to note that "we are cited no authority holding it to be an abuse of discretion to fail to make such an award for attorney's fees." So, on appeal, the New Mexico Supreme Court in *Trujillo* affirmed the action of the trial court disallowing attorney's fees. We believe *Trujillo* to be sufficient authority to hold that even assuming that the claim in count one was based on open account, the allowance of attorney's fees was still a discretionary matter. Like the New Mexico Supreme Court in *Trujillo,* we have been cited no authority indicating that there was an abuse of discretion by the trial court in the instant case when it declined to allow attorney's fees.

Prior to submission of the case to the jury, AVMC moved for a directed verdict in its favor on count one based on the argument that Omni was not the real party in interest. After the return of the verdict awarding Omni $60,000 on its first claim for relief, AVMC moved on the same ground for judgment on count one notwithstanding the verdict. The trial court denied both the motion for directed verdict and the motion for judgment notwithstanding the verdict, and such is now urged as error. In denying these motions the trial court did not err.

■ At or about the time Omni terminated its contract with AVMC, Omni assigned certain of its accounts receivable to the Fidelity National Bank as collateral for outstanding loans. Fidelity perfected the assignments and notified AVMC of the assignment. It is on this assignment that AVMC bases its real party in interest argument. For a number of reasons this argument cannot prevail.

Rule 17(a), Fed.R.Civ.P. provides, in part, as follows:

> Real Party in Interest. Every action shall be prosecuted in the name of the real party in interest. . . . No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

In its answer AVMC did not put in issue Omni's standing to maintain the present action, nor had it previously done so by motion. The pretrial order does not list Omni's standing to maintain the action in its own name as one of the issues to be tried. After trial had commenced, counsel for the first time intimated that Omni was not the real party in interest, and that Fidelity National Bank under its assignment was in fact the real party in interest. It was in this setting that counsel for Omni, although maintaining that Omni was at all times the real party in interest, nonetheless effected a reassignment to Omni by Fidelity National Bank of any interest the latter had in the accounts receivable. In addition, the president of Fidelity National Bank testified at the trial that the bank had no interest in the accounts in question, and his testimony otherwise ratified the bringing of the action by Omni. Under such circumstances the trial court properly rejected the argument that Omni was not the real party in interest.

■ Believing that this phase of the appeal does not merit extended discussion, we simply observe that AVMC's argument based on the alleged failure to have the action prosecuted by the real party in interest fails on any one of several grounds. We would first note that such objection is for the benefit of a defendant, and should be raised in timely fashion or it may be deemed waived. *See* Wright and Miller, Federal Practice & Procedure, § 1554, pages 700–704.

■ Secondly, the assignment by Omni to Fidelity National Bank was for security purposes, and in such circumstance we believe that Omni remained the beneficial owner of the accounts receivable and had standing to institute the present action in its own name. In *Hoeppner Construction Co. v. United States*, 287 F.2d 108 (10th Cir. 1960), we held that the question of whether the assignor or assignee of an assigned claim is the real party in interest in point of having sufficient right therein to enable him to maintain an action thereon in his

own name is referable to the substantive law of the state. And in *Turner v. New Brunswick Fire Ins. Co.*, 45 N.M. 126, 112 P.2d 511 (1941), the New Mexico Supreme Court followed the general rule that an assignment for security only leaves the assignor the beneficial owner of the chose assigned, and that the assignor may still maintain an action in his own name as the real party in interest. To the same effect, *see also Texas San Juan Oil Corp. v. An-Son Offshore Drilling Co.*, 194 F.Supp. 396 (S.D. N.Y.1961) and *United States, ex rel. Allen Construction Corp. v. Verrier*, 179 F.Supp. 336 (N.D.Maine 1959). In this regard we are aware that AVMC argues that the assignment from Omni to Fidelity National Bank was a novation, and not just an assignment for security purposes. However, the trial court was apparently of the view that this was an assignment for security only, and under the circumstances we agree.

■ Thirdly, when the objection that Omni was not the real party in interest was eventually raised by defense counsel during the trial, the basis for such objection was immediately cured by reassignment and ratification. Such is in line with Rule 17(a) which states that an action should not be dismissed on the ground that it is not prosecuted in the name of the real party in interest until the plaintiff has been given a reasonable time to remedy this situation. For all these reasons, then, AVMC's argument that the judgment entered on count one should at this late date be set aside on the ground that Omni is not the real party in interest is untenable.

■ The remaining matters argued here by way of both appeal and cross-appeal are in our view minor in nature and only brief reference thereto will be sufficient. Count two in the complaint was in the name of Omni only and was based on an alleged breach of the distributorship contract with AVMC. Under the terms of that contract AVMC agreed to promote the sale of the Multiputer and agreed not to market any product which competed with the Multiputer. As indicated, Omni around the end of

March terminated the contract with AVMC, as it apparently had the right to do, and shortly thereafter ceased doing business. Cline, the inventor, then formed another company, Cybernetic, and the latter began manufacturing the Multiputer and also carried on the distribution thereof. After the distributorship was ended, AVMC began distribution of a machine known as the Digitor, which roughly performed as did the Multiputer. It was on this sequence of events that Omni based count two, alleging a breach of contract on the part of AVMC. The trial court directed a verdict for AVMC on count two and refused to submit the matter to the jury. In so doing the trial court in our view did not err.

As concerns count two, it should be remembered that Omni terminated its contract with AVMC. The evidence does not show that prior to the termination of the contract AVMC had in anywise breached the terms of its agreement with Omni. It had attempted to promote the sale and distribution of the Multiputer, and it had not handled any competing lines. It was only *after* the termination of the contract that AVMC developed and marketed the Digitor. Such did not constitute a breach of the contract, which was at an end. In this general connection it should be remembered that this is not a patent case. Count two is based on breach of contract, and, like the trial court, we do not believe that Omni made a prima facie case.

■ Count four in the complaint was submitted to the jury, and on appeal Omni and Cybernetic assert that the trial court erred in not directing a verdict in their favor on count four as to liability, and submitting only the question of damages to the jury. We do not agree. In the action instituted in the United States District Court for the Central District of California, AVMC named as a party defendant the Fidelity National Bank. In count four in their complaint, Omni and Cybernetic alleged that AVMC's claim against Fidelity National Bank was spurious and constituted an unlawful interference with the business relationship between Omni and Fidelity National Bank. The damage resulting from the naming of Fidelity National Bank in the California proceeding was a failure by the bank to thereafter loan money to Omni and Cybernetic. The evidence is in our view of such a nature as to preclude directing a verdict in favor of Omni on count four. Indeed, as we see it, Omni was fortunate to have this particular claim even submitted to the jury. And the jury by its verdict has resolved count four against Omni and Cybernetic.

■ AVMC by its appeal complains that opposing counsel made improper closing argument in connection with AVMC's counterclaim. This counterclaim was based on the theory that Omni terminated its contract with AVMC in order to stop selling Multiputers to AVMC, and then Cline, the inventor, turned around and formed a new corporation, Cybernetic, which started immediate production of the Multiputer, and that in its distribution of the Multiputer Cybernetic began to deal with AVMC's customers. The counterclaim was submitted to the jury, and the jury returned a verdict for Omni and Cybernetic. The closing argument concerned the question of damages, if any, suffered by AVMC, as a result of Cybernetic's manufacture and distribution of the Multiputer. The comment itself was in our view most innocuous. Nonetheless, the trial court did stop the line of argument, and we fail to see any real prejudice.

The jury by its verdict, in effect, dismissed the claims of both Omni and AVMC as to breach of contract and unfair competition. At the same time it returned a verdict in favor of Omni for merchandise delivered AVMC and for which the latter had not paid. Our study of the record leads us to conclude that such resolution of the dispute did substantial justice to the parties. Finding no error on the part of the trial court, we therefore affirm.

Judgment affirmed.