MARSHALL BENNETT et al., Plaintiffs-Appellees, v. THOMAS F. SEAY et al., Defendants.—(GORDON STRONG AND COMPANY, Defendant-Appellant.)

First District (3rd Division)   Nos. 78-1486, 78-1656

Opinion filed June 27, 1979.

Robert H. Joyce and Diane Mayne, both of Seyfarth, Shaw, Fairweather and Geraldson, of Chicago, for appellant.

D. Calvin Sincock and Susan R. Sneider, both of Marks, Katz, Walker and Blatt, of Chicago, for appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

After a trial without a jury, the trial court entered judgment for $6,654.53 in favor of Bennett and Kahnweiler Associates (hereinafter "B&K") and Donald Schaumberger, a B&K partner, against Gordon Strong and Company. (These are the only parties involved in this appeal.) The action by plaintiffs was for a brokers' commission arising out of a lease renewal. On appeal Strong contends that a broker's commission for a lease renewal may not be recovered absent an express agreement for such a commission and that the court's finding that such an express agreement existed is contrary to the manifest weight of the evidence. Strong also maintains that if any agreement was formed, it was unenforceable under the antitrust laws. 15 U.S.C. §1 (1973).

On February 26, 1964, Strong was the beneficial owner of a building located at 146-150 North Clinton Street in Chicago. Seay & Thomas, Inc., was managing agent of the building. Schaumberger, then an employee of Seay & Thomas, was assigned to secure commercial tenants for the building. He sent leasing brochures to several real estate brokers, including B&K. The brochures contained a stamped legend indicating there was a "full commission" to be paid to the broker who located suitable tenants.

On May 1, 1964, Schaumberger left the employ of Seay & Thomas and became a partner of B&K. Seay & Thomas thereafter negotiated a 10-year lease, commencing August 1, 1964, with a tenant for space in the building. The lease granted the tenant an option to rent additional space in the building along with an option to renew the lease for an additional five years following the termination of the original lease. Schaumberger's bill for $14,880 for broker's services rendered in connection with the original lease was paid by Seay & Thomas on behalf of Strong.

In 1969, the tenant exercised the option to lease additional space in the building. Schaumberger acknowledged that neither B&K nor he had any role in the negotiation or exercise of the option. Seay & Thomas, however, paid him a commission of $2,227 in connection with the exercise of the option.

In 1974, the tenant exercised the option to renew the lease for an additional five years. The renewal was negotiated between the tenant and Charles Rau, an employee of Seay & Thomas. On November 15, 1974, Rau wrote B&K detailing his negotiation of the lease renewal and stating that he had arranged for Seay & Thomas to get a portion of any commission paid B&K for the renewal. Schaumberger agreed to pay Rau $1,654.53 out of the proceeds from the lease renewal commission. Schaumberger presented a $6,654.53 bill to Seay & Thomas for a broker's commission on the lease renewal. Seay & Thomas and Strong refused to pay the bill.

On October 17, 1975, B&K filed an arbitration claim for a broker's commission against Thomas F. Seay before the Chicago Real Estate Board (hereinafter "CREB".) CREB dismissed the claim against Seay individually because he was not owner of the building. CREB found that Strong, in which Seay owned 6 to 8 percent of the outstanding shares, was the building's beneficial owner. CREB awarded plaintiffs a commission of $6,654.53 from Strong; this amount was in accord with the CREB schedule. B&K filed an action in the trial court to recover the foregoing amount from Strong; Seay filed an action to vacate the arbitration award. After consolidation of the two suits, the parties stipulated to the evidence presented at the arbitration hearing. Additionally, Schaumberger testified that he was unaware of the exercise of the lease renewal option by the tenant and that he did not participate in any negotiations for the lease renewal. He testified that the legend "full commission" on the leasing brochure was a well-known term describing the recommended broker's commission schedule of CREB. The schedule permitted a broker to charge commissions for the initial lease and for all subsequent options and renewals. Schaumberger sought a broker's commission when he was informed the lease had been renewed.

On appeal Strong contends initially that plaintiffs may not recover brokers' commissions on the renewal of a lease absent an express agreement for a renewal commission between a broker and lessor. We agree with Strong.

■■ No particular form of words is necessary to engage the services of a real estate broker. (*Bau v. Sobut* (1977), 50 Ill. App. 3d 732, 365 N.E.2d 724; *Cole v. Brundage* (1976), 36 Ill. App. 3d 782, 344 N.E.2d 583.) All that is required is action by the broker with the consent of the principal; the agreement between the broker and the principal can be evidenced either

in writing, orally, or by implication from the conduct of the parties. (*Cole v. Brundage*; *Van C. Argiris Co. v. Caine Steel Co.* (1974), 20 Ill. App. 3d 315, 314 N.E.2d 361; *Bennett v. H. K. Porter Co.* (1973), 13 Ill. App. 3d 528, 301 N.E.2d 155.) Under such circumstances, a real estate broker earns his commission when he produces a purchaser or lessee who is ready, willing and able to meet his principal's terms. (*Ellis Realty v. Chapelski* (1975), 28 Ill. App. 3d 1008, 329 N.E.2d 370; *Garrett v. Babb* (1975), 24 Ill. App. 3d 941, 322 N.E.2d 217.) However, the right of a broker who has procured a tenant for a lessor to recover a commission on a renewal, extension, or renegotiation of the lease, where the negotiations were made directly between the lessor and lessee, depends upon the presence of express contractual provisions for such commission. (*Wood v. Hutchinson Coal Co.* (4th Cir. 1949), 176 F.2d 682; *Rosenfeld Realty Co. v. Cadence Industries Corp.* (1973), 75 Misc.2d 634, 348 N.Y.S.2d 523; *Spivak v. Madison-54th Realty Co.* (1969), 60 Misc.2d 483, 303 N.Y.S.2d 128; *Griffith v. Seco Co.* (Mo. App. 1966), 410 S.W.2d 691; *Dooly v. Embry-Riddle Co.* (1952), 2 Fla. Supp. 172; *Cotter v. Naomi* (La. App. 1961), 127 So. 2d 573; *Plumbing Industry Program, Inc. v. Good* (Fla. App. 1960), 120 So. 2d 639; *Comly v. First Camden Nat. Bank & Trust Co.* (1944), 22 N.J. Misc. 123, 36 A.2d 591; *M. J. Harris Co. v. Buckeye Sheriff Street Realty Co.* (Ohio App. 1941), 40 N.E.2d 949; *William Adam Schulz & Co. v. Realty Associates, Inc.* (1940), 17 N.Y.S.2d 924.) The foregoing cases hold that, to sustain an action for a broker's commission on a lease renewal, the broker must prove that a special agreement existed in addition to the initial agreement for securing a lessee; that the special agreement between the lessor and the broker was reduced to writing; that the lease renewal was negotiated under the same terms as the initial lease; or that the lease renewal was the result of services performed by the broker. But *cf. Eastern Associates, Inc. v. Sarubin* (1975), 274 Md. 378, 336 A.2d 765.

In the present case, there was no special agreement between Strong and the plaintiffs entitling the latter to a commission for the lease renewal. The only writing involved was the leasing brochure sent out by Seay & Thomas to various brokers describing the available space. We reject plaintiffs' argument that the stamped legend of "full commission" on that brochure constituted an express agreement between Strong and the plaintiffs for lease renewal commissions. The simple phrase "full commission" is insufficient to establish a special agreement. We find that the trial court erred in holding that plaintiffs were entitled to a lease renewal commission.

We also reject plaintiffs' contention that the award of a lease renewal commission was proper under *quantum meruit*. A plaintiff may recover under such a theory where no contract is shown but it is demonstrated

that services in fact were rendered. (*Slater v. Jacobs* (1977), 56 Ill. App. 3d 636, 371 N.E.2d 1054; *Neville v. Davinroy* (1976), 41 Ill. App. 3d 706, 355 N.E.2d 86.) Schaumberger testified that neither B&K nor he rendered any services in connection with the lease renewal, and *quantum meruit* is therefore inapplicable.

In view of our holding that Strong did not enter into an express contract for a renewal commission with plaintiffs, it is unnecessary to consider Strong's antitrust defense.

For the reasons stated, the judgment of the circuit court of Cook County is reversed.

Judgment reversed.

McGILLICUDDY and RIZZI, JJ., concur.