715 P.2d 1080

**LEON, LTD.,**
**Plaintiff-Appellee-Cross-Appellant,**

v.

**Leroy L. CARVER, Jr., Leroy L. Carver, III, Carver Development, and Carver Development Partnership One, Defendants-Appellants-Cross-Appellees.**

No. 15776.

Supreme Court of New Mexico.

Feb. 26, 1986.

Sutin, Thayer & Browne, Norman S. Thayer, Ronald Segel, Albuquerque, for plaintiff-appellee-cross-appellant.

Rodey, Dickason, Sloan, Akin & Robb, P.A., Diane Fisher, Jill E. Adams, Albuquerque, for defendant-appellants-cross-appellees.

## OPINION

WALTERS, Justice.

This is a suit to recover unpaid leasing commissions under an exclusive leasing agreement between plaintiff-appellee Leon and defendant-appellant Carver for the leasing of space in an office building known as First City Place. The agreement, as amended in January 1981, covered the period from April 1, 1980 through December 31, 1982.

Carver is a former client of the Sutin, Thayer & Browne law firm. Sutin represented Leon through all stages of this litigation. The trial court denied Carver's pretrial motion to disqualify Sutin from representing Leon.

Leon's Third Amended Complaint stated five claims for relief. Of the counts at issue in this appeal, Count I sought Leon's commission on the October 1982 five-year extension of the first-through-fourth-floor lease held by tenant First City Financial Corporation, plus punitive damages for fraud in inducing Leon's waiver of that commission. Count III claimed commissions for First City's March 1983 expansion into the basement and the fifth, sixth, seventh, ninth and tenth floors of the building. Count IV asked for a commission on First City's March 1983 extension of the first-through-fourth-floor lease from ten to twenty years, and Count V alleged commissions due for leases negotiated with three other tenants, plus punitive damages. Car-

ver counterclaimed, alleging that Leon had breached his duty under the agreement to exercise his best efforts and to cooperate with other brokers in procuring leases.

The trial court entered directed verdicts for Leon on Count V and Carver's counterclaim, and for Carver on the punitive damage claims of Counts I, II and V. The jury returned verdicts for Leon on Counts I and IV and part of Count III, and for Carver on Count II. Carver appeals and Leon cross-appeals. We affirm.

The issues argued by Carver are:

1. The trial court erred in denying Carver's motion to disqualify Sutin from representing Leon.

2. The trial court erred in submitting Counts III and IV to the jury.

3. Leon neither contributed to nor properly registered the March 1983 extension of the First City lease on floors one through four. (Count IV)

4. The trial court's instruction to the jury on waiver under Count I was erroneous.

5. The trial court erred in striking Carver's counterclaim for failure to prove damages.

On cross-appeal, Leon claims:

1. The trial court erred in directing a verdict for Carver on Leon's claim for punitive damages under Count I.

2. The jury erred in awarding to Leon less than the full amount claimed under Count III.

3. Leon is entitled to attorneys' fees under Count V.

Because some of these issues are interrelated, we do not discuss them exactly in the order presented by the parties.

## I. Disqualification of Sutin Firm

■ According to Carver, the trial court should have disqualified Sutin from representing Leon because Sutin's prior representation of Carver is substantially related to the present litigation. *See United Nuclear Corp. v. General Atomic Co.,* 96 N.M. 155, 243, 629 P.2d 231, 319 (1980), *appeal dismissed,* 451 U.S. 901, 101 S.Ct. 1966, 68 L.Ed.2d 289 (1981) (citing *Westing-*

*house Electric Corp. v. Gulf Oil Corp.,* 588 F.2d 221 (7th Cir.1978)). The "substantial relationship" test expressed in *Westinghouse* is based on Canons 4 and 9 of the Code of Professional Responsibility, and requires a three-tiered analysis: (1) a factual reconstruction of the scope of the prior legal representation; (2) a determination of whether it is reasonable to presume that the lawyer would have received confidential information of the type alleged by his former client; and (3) a determination of whether the alleged confidential information is relevant to the issues raised in the litigation pending against the former client. *Id.,* 588 F.2d at 225.

The trial court's findings of fact regarding the scope of the prior representation are not challenged. Having made those findings, the court determined that Sutin had received no confidential information relevant to the issues in this case.

■ It is not appropriate for a trial court to inquire whether *actual* confidences have been disclosed during the prior representation, *Westinghouse,* 588 F.2d at 224, because it is difficult, if not impossible, to directly challenge such an inquiry or finding without disclosing the very confidences sought to be protected. *Id.* n. 3. We hold, however, that the trial court correctly concluded that there was no substantial relationship between Sutin's prior representation of Carver and the present litigation. "A correct decision will not be reversed because the result was reached for the wrong reason." *Melton v. New Mexico Department of Human Services,* 97 N.M. 102, 104, 637 P.2d 52, 54 (Ct.App. 1981).

■ A lawyer's conduct should always be constrained by his duty to avoid even an appearance of impropriety. *See* NMSA 1978, Code of Prof.Resp., Canon 9 (Repl. Pamp.1985). The impropriety sought to be avoided by the substantial relationship test is the risk that a lawyer may inadvertently use the confidences or secrets of a former client against him. *See id.,* Canon 4; *Silver Chrysler Plymouth, Inc. v. Chrysler*

*Motors Corp.*, 518 F.2d 751, 754 (2d Cir. 1975). It might therefore have been wiser for Sutin to decline to represent Leon in this lawsuit; nonetheless, disqualification is mandatory only when the relationship between the prior representation and present litigation is patently clear. *E.g., State v. Jones*, 180 Conn. 443, 449, 429 A.2d 936, 939 (1980), *overruled in part, State v. Powell*, 186 Conn. 547, 555, 442 A.2d 939, 944 (1982); *Silver Chrysler Plymouth*, 518 F.2d at 753–54, 757.

Even if the relationship between the past and present representations is not clear at the outset so as to justify disqualification, the court may later disqualify if, during trial, it appears that an attorney may be using confidential information against a former client. *See Silver Chrysler Plymouth*, 518 F.2d at 758 & n. 10. The trial court in this case did not deem such action necessary nor did Carver bring to the court's attention any of the potentially-violated confidences of which he now complains on appeal. Moreover, Carver's list of potential confidences to which Sutin might have gained access sets forth matters which are either irrelevant to this litigation or not actual confidences.

The jury was not asked, as Carver implies, to determine whether the "free" ancillary services performed by Leon as broker for Carver's purchase of the land were sufficient to justify the size of Leon's commissions under the agreement. The fact that Carver may have paid Sutin to perform the same or similar services during the early stages of property development is not relevant to this lawsuit. Likewise, any knowledge Sutin may have gained about Carver's financial status is irrelevant to this litigation. The issue of punitive damages never reached the jury. In any event, Carver's financial status was discoverable. *See Ruiz v. Southern Pacific Transportation Co.*, 97 N.M. 194, 638 P.2d 406 (Ct. App.), *cert. quashed*, 97 N.M. 242, 638 P.2d 1087 (1981).

A superficial resemblance between the current and prior representations will not, without more, create a violation of the can-ons. *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1029 (5th Cir.1981). The trial court made a careful comparison of both periods of representation in its findings of fact. Because those findings have support in the evidence and have not been effectively challenged, we affirm the denial of Carver's motion to disqualify Sutin.

## II. Counts III & IV

### A. Submission of Issues to Jury

Carver argues that: (1) it was error to find the agreement was ambiguous; (2) even if the agreement was ambiguous, it was error to submit Counts III and IV to the jury because the parties clearly intended that the ninety-day provision should not apply to lease extensions or expansions; and (3) the court's instructions erroneously allowed the jury to redetermine the issue of ambiguity.

■ The agreement, when read as a whole, is ambiguous. Paragraph 2(d), which provides for commissions on extensions and expansions that occur "during the term of the agreement," appears in a document entitled Schedule of Commissions. The Schedule of Commissions is expressly made subject to the Exclusive Leasing Agreement to which it is attached. The Exclusive Leasing Agreement provides for commissions on leases executed within ninety days after the agreement expires, if Leon negotiated with those tenants prior to expiration of the agreement, and if he had submitted a list of those tenants within 10 days "following such expiration." Thus, the phrase "during the term of the agreement" found in Paragraph 2(d) can be read to mean either "prior to the expiration date" or "prior to the end of the ninety-day period following the expiration date." Leon's understanding of the ambiguity was sufficient evidence to allow the jury to decide the intentions of the parties and to conclude further that the parties had intended the ninety-day provision to apply to extensions of term and expansions of space

by existing tenants, and not simply to new tenants, as Carver contended.

■ Contrary to Carver's assertions, the trial court's instructions on Counts III & IV did not allow or instruct the jury to redecide the issue of ambiguity. It explicitly charged the jury to determine the intent of the parties. The introductory explanation of the term "ambiguous" in the instruction was, at worst, harmless surplusage. An unnecessary instruction is not grounds for reversal if it does not mislead the jury. *El Paso Electric Co. v. Pinkerton*, 96 N.M. 473, 475, 632 P.2d 350, 352 (1981).

### B. Jury Verdicts on Counts III & IV

Leon's January 1983 ten-day letter listed the prospective tenants with whom Leon had dealt during the life of the agreement and included a reference to "First City Financial Corporation * * * (5th & 6th Floor Expansion)." Under Count IV, the jury awarded Leon's full commission on First City's March 1983 ten-year extension of its first-through-fourth-floor lease. It limited Leon's recovery under Count III, however, to commissions on the March 1983 expansion to the fifth and sixth floors only.

Carver contends that Leon should recover no commission on the Count IV extension because Leon did not mention it specifically in his ten-day letter nor did he have any part in negotiating it. In his answer brief, Leon insists that the inclusion of First City's name in the ten-day letter, coupled with the fact that Leon had procured the original first-through-fourth-floor lease, satisfied the contractual requirements for a commission on the tenant's extension.

On cross-appeal Leon maintains that because he had submitted a portion of the Count III expansion to First City before the agreement expired, he is entitled to full commissions on the entire expansion.

■ A broker's right to a commission on a lease *extension* or *expansion of space*, which has been negotiated directly between lessor and lessee, is dependent upon the presence of an express agreement for such commission. *E.g., Seay v. Bennett & Kahnweiler Associates*, 73 Ill. App.3d 944, 945, 29 Ill.Dec. 912, 392 N.E.2d 609 (1979); *Griffith v. Seco Co.*, 410 S.W.2d 691 (Mo.App.1966). The jury's award of commissions on some of the March 1983 transactions necessarily included a determination that the parties intended the ninety-day provision to apply to transactions with existing tenants. The ninety-day provision allows a commission on property leased within ninety days after the agreement expires if the two previously mentioned conditions precedent have been met: (1) the broker has negotiated with or presented the property to the tenant before the agreement expires, and (2) the tenant's name appears in the broker's ten-day letter to the lessor. By its verdict the jury applied this provision to Paragraph 2(d) which allows commissions on extensions of term or expansions of space which occur *"by virtue of provisions in the lease* or through subsequent modification of such provisions."* (Emphasis ours.)

The jury had before it the provisions of the Executive Leasing Agreement, the parties' testimony as to their negotiations and intent, and the original first-through-fourth-floor First City lease containing a provision for extension of term. The jury could reasonably have concluded on that evidence that the March 1983 extension occurred pursuant to the provisions of the original lease (which had been procured by Leon), and that the ninety-day provision's requirement for some sort of prior negotiations between broker and tenant had thus been satisfied. *Cf. Percy Galbreath & Son, Inc. v. Dehyco Co.*, 548 S.W.2d 664 (Tenn.App.1976), *cert. denied*, March 14, 1977; *Louis Schlesinger Co. v. Kresge Foundation*, 388 F.2d 208, 211–12 (3d Cir. 1968).

On the other hand, the original First City lease made no provision for commissions on expansion of space. Consequently, it was not unreasonable for the jury to limit Leon's commissions under Count III to the

fifth and sixth-floor rentals upon evidence that Leon had submitted only those portions of the building to First City prior to the expiration of the agreement.

## III. Count I

### A. Instruction on Waiver

Carver challenges the second paragraph of Instruction 14 on the ground that, together with Instructions 2 and 3, it erroneously added elements to Carver's claim of waiver and required him to prove the negative of those elements; and that Instruction 14 impermissably transformed Leon's claim for fraudulent misrepresentation to one for innocent misrepresentation. Those specific objections were not raised in the trial court; they have not been preserved for review. *See Budagher v. Amrep Corp.*, 97 N.M. 116, 637 P.2d 547 (1981); *Morris v. Dodge Country, Inc.*, 85 N.M. 491, 513 P.2d 1273 (Ct.App.), *cert. denied*, 85 N.M. 483, 513 P.2d 1265 (1973).

Carver objected below that there was insufficient evidence to support the second paragraph of Instruction 14 and that Instruction 2 should explicitly have stated that it was Leon who was claiming misrepresentation as grounds for avoiding the written waiver. Carver argued that the expansion of Instruction 2 was necessary "to set out the correct burdens of proof." He has not renewed these arguments here, and we will not consider other objections raised for the first time on appeal. *Zamora v. Smalley*, 68 N.M. 45, 358 P.2d 362 (1961).

### B. Punitive Damages under Count I

 At the close of Leon's case, the trial court directed a verdict for Carver on Leon's punitive damage claim, declaring that Leon had failed to produce clear and convincing evidence of fraudulent intent and reliance.

Although Leon presented evidence of events from which he asks us to draw inferences of fraud, we are not persuaded that the trial court was wrong under the test of clear and convincing evidence; con-sequently, there was no issue for the jury and a directed verdict was proper. NMSA 1978, UJI Civ. 8.20, Directions for Use (Repl.Pamp.1980). Even viewing the evidence in the light most favorable to Leon, *Archuleta v. Pina*, 86 N.M. 94, 519 P.2d 1175 (1974), we are unable to say that the trial court misjudged the evidence.

## IV. Directed Verdict on Counterclaim

The trial court struck Carver's counterclaim for failure to prove damages. Carver argues that he could have proved that substantial leasing percentages should have been obtained if Leon had exerted his best efforts, had the trial court allowed him to testify on that issue. On Carver's offer of proof, consisting of his own testimony and a related exhibit, the trial court held that the offer of proof was speculative; that Carver lacked sufficient experience in the Albuquerque real estate market to offer an opinion on probable leasing success, and that Carver's reliance on certain economic and market appraisals was insufficient because the documents were not available in court.

Carver argues that in New Mexico a property owner is presumed competent to testify as to the value of his property, *e.g.*, *City of Albuquerque v. Ackerman*, 82 N.M. 360, 482 P.2d 63 (1971), and that the accuracy of Carver's opinion goes to the weight rather than admissibility of his testimony. He further claims that he gained knowledge of the Albuquerque real estate market when he was deciding whether to buy property there, and that under NMSA 1978, Evid.R. 703 (Repl.Pamp.1983), he could base his opinion on documents not available in court. But Carver was not offering to testify regarding the value of the building or the property; he based his counterclaim on leases he thought Leon should have procured had he exerted the best efforts required by the leasing agreement.

Carver's offer of proof contained certain assumptions about the rate at which space in the building could have been leased during the life of the agreement. Those as-

sumptions were, in turn, based on certain economic and market appraisals allegedly used by Carver in the early stages of the property's development. Without access to those documents, the court could not ascertain whether the appraisals themselves had a factual or conjectural basis.

As we have noted, an owner's presumed expertise on the value of his property does not necessarily extend to the rate at which space in his building could or should have been leased under the then-prevailing market conditions. It was undisputed that First City Place was Carver's first Albuquerque venture and that, although the Albuquerque market for office space was weak during the period of the leasing agreement, Carver was demanding the highest rates in town.

Whether a witness qualifies as an expert is a decision for the trial court that will not be disturbed absent an abuse of discretion. *Duran v. Lovato*, 99 N.M. 242, 656 P.2d 905 (Ct.App.1982), *cert. denied*, 99 N.M. 226, 656 P.2d 889 (1983). Likewise, the admission or exclusion of expert testimony is discretionary with the trial court. *Cantrell v. Dendahl*, 83 N.M. 583, 494 P.2d 1400 (Ct.App.1972). Expert testimony may be received if, and only if, the expert possesses such facts as would enable him to express a reasonably accurate conclusion as distinguished from mere conjecture. *Duran*, 99 N.M. at 245–46, 656 P.2d at 908–09.

Based on the record before us, the trial court obviously felt that Carver was not competent to give evidence as an expert on leasing projections and probabilities. We are satisfied that there was no abuse of discretion in refusing Carver's testimony.

## V. Attorneys' Fees on Count V

The trial court refused to award Leon attorneys' fees under Count V on the ground that the claim was not one on open account. *See* NMSA 1978, § 36–2–39 (Repl.Pamp.1984). We think the trial court was correct in denying open account status to the claim, but even if we assume the claim to be one on open account, the allowance of attorneys' fees is entirely discretionary with the court. *Audio-Visual Marketing Corp. v. Omni Corp.*, 545 F.2d 715, 718 (10th Cir.1976) (citing *Trujillo v. Romero*, 82 N.M. 301, 481 P.2d 89 (1971)). Failure to award attorneys' fees provides no ground for reversal.

For all the reasons stated herein, the judgment of the trial court is

AFFIRMED.

SOSA, Senior Justice, and FEDERICI, J., concur.